## PEOPLE *v.* OSBORN.

1. HOMICIDE—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—SUFFICIENCY
—QUESTION FOR JURY.

> In a prosecution for murder, although the evidence was circumstantial, *held*, sufficient to take the case to the jury; and whether it established defendant's guilt beyond a reasonable doubt was for the jury.

2. TRIAL—HOMICIDE—CONDUCT OF PROSECUTOR—CURING ERROR.

> In a prosecution for murder, where the names of several witnesses, among them defendant's wife, who could not be a witness against him under 3 Comp. Laws 1915, § 12555, had been placed on the information at the request of defendant's counsel, and were subpœnaed at the expense of the people, and the prosecutor asked one of the people's witnesses whether defendant's wife was in the court room, which the witness did not answer, and on objection by defendant's attorney that she could not be a witness, the prosecutor responded that she could be for him, *held*, that the misconduct of the prosecutor was cured by the court's informing the jury that the incident should have no influence upon their minds whatever.

Error to Jackson; Parkinson, J. Submitted January 16, 1919. (Docket No. 116.) Decided April 3, 1919.

Ezra Osborn was convicted of murder in the first degree, and sentenced to imprisonment for life in the State prison at Jackson. Affirmed.

*James J. Noon,* for appellant.

*Nathan E. Bailey,* Prosecuting Attorney, and *M. Grove Hatch,* Assistant Prosecuting Attorney, for the people.

FELLOWS, J. Defendant here reviews his conviction of the murder of one Roy Bassett. Bassett was a taxicab driver, whose home was Lansing. On the

morning of September 25, 1916, his taxicab was found in the highway about three and one-half miles east of the city of Jackson, and on the road to Michigan Center. It was seen standing there about seven o'clock the evening before. On the 26th of September the body of Bassett was found 30 or 40 feet from where the taxicab was found, with two bullet holes in it, one of the bullets having passed through the heart. The body apparently had been dragged to the place where it was found and covered with grass. About 40 or 50 feet away from the body was found a revolver with two empty cartridges, its caliber being of the same size as the bullets found in the body.

Defendant here insists that the conviction should be reversed upon two grounds:

(1) That the evidence did not justify the submission of the case to the jury, and

(2) Prejudicial conduct on the part of the prosecuting attorney.

1. The evidence in the case was circumstantial. We cannot within the compass of this opinion attempt to detail it. It will suffice to say that there was testimony tending to show that about four o'clock Sunday afternoon, September 24th, at his garage in Lansing, Bassett was employed by a man to drive him from Lansing to some place about twelve miles north of Jackson; the testimony tends to show that defendant was such man. There was testimony tending to show Bassett and defendant together in Bassett's taxicab on the way south from Lansing. There was testimony that they were seen about three miles north of Jackson, at which point they were accompanied by another man and a woman. There was testimony that about six o'clock in the evening defendant came in a taxicab to the residence of an acquaintance in the city of Jackson and got a drink of whiskey, the other occupants of the taxicab not getting out but urging de-

fendant to hurry. There was testimony tending to show that a taxicab party bought gasoline at one of the stations in Jackson in the early evening, and while the salesman was unable to identify the members of the party, in a general way they corresponded with the party in Bassett's machine, except that there was but one man and a woman besides the driver. There was testimony tending to show that the revolver found near Bassett's body belonged to defendant. In addition to this testimony there was also testimony given by the officers who were present soon after defendant's arrest tending to show that in explaining his whereabouts on the day in question he made contradictory and false statements.

We are impressed that there was sufficient evidence to take the case to the jury. Whether it established defendant's guilt beyond a reasonable doubt was for the jury. The charge was an exceptionally clear and fair one and is not complained of in any particular by defendant's counsel.

2. It appears from the record that a week or more before the trial of defendant, by consent of the court and the prosecuting attorney, at the request of defendant's attorney, the names of certain witnesses, among them that of defendant's wife, were indorsed on the information and such witnesses were subpœnaed at the expense of the people. It is stated that this is the customary way in Jackson county of procuring defendant's witnesses where he is without means as in the instant case. Mrs. Osborn did not sit with her husband during the trial but was among the spectators in the court room. When the people's case was near its close the sheriff was called and gave testimony on the part of the people. Upon his cross-examination defendant's counsel developed the fact that the names of five witnesses had been placed on the information at his request, three of whom were

called by the people.  When the sheriff left the stand the prosecuting attorney, without asking permission of defendant or his counsel or informing them of the purpose of recalling the witness, recalled to the stand one of the deputy sheriffs, and the following occurred:

"*Q.* Do you know the respondent's wife?
"*A.* Yes, sir.
"*Q.* Is she in the courtroom now?
"*Mr. Noon:* Wait a moment.  I object to that and take an exception to it.  If your honor please, I ask the court to instruct the jury that that is an incorrect statement, and ask him to reprimand the prosecutor for making it.
"*Mr. Bailey:* Her name is on the information.
"*Mr. Noon:* That is a wholly unjustifiable statement; it is a very bad question, your honor.  Your honor, I want to say to you, I am incensed at the prosecutor, with his experience, asking that kind of a question.  The Supreme Court in *People* v. *Trine* [164 Mich. 1], has said that it is reversible error to make that kind of a statement.  He knows it is immaterial; that she can't be a witness.  He knows as he sits in his chair it is for the purpose of prejudicing the jury.
"*Mr. Bailey:* She can be a witness for him.
"*Mr. Noon:* Mr. Bailey, that is wholly inexcusable; that is a bad, rash statement.
"*Mr. Bailey:* You are excited.
"*Mr. Noon:* Yes, I am excited to think the prosecutor would make that kind of a statement.  I am excited and angry both.  You know it is wrong; you know as you sit in your chair it is wrong.
"*Mr. Bailey:* I don't know any such a thing.  She is indorsed on the information as a witness.
"*Mr. Noon:* I take exception to that, if your honor please, and I say that is a very prejudicial statement.
"*The Court:* There should nothing take place in open court in reference to a wife by any inquiry whether the other party would consent to her being a witness.  It should not be made in the presence of the jury.
"*Mr. Noon:* Exactly.
"*The Court:* Or either party be put in a position

he must refuse in the presence of the jury. That has been said by the Supreme Court.

"*Mr. Noon:* Puts me in a position where he has no right to put me; he has no right to ask that question. He puts me in a position where I must object, which he has no right to do; it must be prejudicial. He can't be condemned too severely. Mr. Bailey knows that is not right. I would not forget my oath of office enough to make that kind of a statement.

"*Mr. Bailey:* I take exception to that remark of Mr. Noon's. He goes too far.

"*Mr. Noon:* I say I would not make that statement in the presence of the jury if I was the prosecuting attorney of this county. You say I am excited. I am, and chagrined to think you would make that kind of a statement.

"*The Court:* Gentlemen, I can only say that this matter should not have occurred in open court in the presence of the jury, and it should not influence your mind against the respondent at all because the question has been asked in open court, nor should any answer that might have been made to the question, if answer was made—if it was answered, it should have made no influence upon you in your determination of the questions in this case.

"*Witness:* I didn't answer it.

"*The Court:* If it was not answered the asking of the question was not lawful, and the fact that it was asked should have no influence upon your mind whatever."

Defendant made a motion for a new trial alleging among other reasons this transaction. The trial judge was of the opinion that the misconduct of the prosecutor was cured, and we have before us the question as to whether under the circumstances, and all of them, what was said and done, all of it, constituted reversible error. The custom in vogue in Jackson county of having the names of the defendant's witnesses indorsed on the information, where he is without means to procure their attendance, does not comport with the usual practice under such circumstances.

Usually an order is made that such witnesses be subpœnaed at public expense. The custom in vogue therefore created an unusual situation; the people would be expected to produce the wife of defendant, her name being indorsed on the information, but she could not be a witness against him without his consent. Section 12555, 3 Comp. Laws 1915.

Cases are numerous in this court where we have had occasion to consider the conduct of counsel upon the trial of jury cases. We cannot undertake the review of all or any considerable portion of them. Where the conduct of counsel was prejudicial and was not or could not be cured by the trial judge we have reversed the cases. Where such conduct could be and was cured by the trial judge and the error was therefore without prejudice we have declined to disturb the judgments. Illustrative of the first class is *People* v. *Treat*, 77 Mich. 348. In that case, the prosecuting attorney in his closing argument, after Judge Smith had addressed the jury in behalf of the defendant, stated what had been whispered to him by the complaining witness that Judge Smith had wanted his client to plead guilty. This court was of the opinion that the error was of such a character as that it was not and could not be cured by what was said by the trial judge, and it was there said:

"The effect of such statement was to influence the jury to believe not only that Treat was guilty, but to destroy entirely the force of the argument which his counsel had made in his favor, and make it appear that he was rendering his client a merely perfunctory service; that while he was urging upon the jury the innocence of his client, the prisoner at the bar, he believed him to be guilty of the offense charged. No amount of caution that the jury should disregard such statement could prevent its having some weight with them."

In *People* v. *Fowler*, 104 Mich. 449, the prosecuting

attorney in his argument referred to the fact that Mrs. Peck, with whom defendant was charged with having committed adultery, had not been sworn. This court said:

"This language was entirely uncalled for. The prosecutor had no right thus to attempt to prejudice the respondent and the trial court should not have permitted these remarks, *and, if made, should have directed the jury that they could not weigh that fact against the respondent.*"

Counsel for the defendant relies most strenuously on the case of *People* v. *Trine,* 164 Mich. 1, and insists that it is absolutely controlling on the instant case. In that case the prosecuting attorney called defendant's wife to the stand without first obtaining his consent. This compelled the defendant to object. The case was reversed. We have examined the record in that case for the purpose of having before us the facts of the case and the exact question there considered. We find the assignment of error there raising the question to be as follows:

"The court erred in not reprimanding the counsel for the people in calling to the stand the witness, Mrs. Floyd Trine."

This was the error there assigned and there considered. What was there said had reference to the record with the assignment of error there before the court. In that case the prosecutor was not reprimanded, and the jury not instructed to disregard the incident. In the case at bar the jury was told that the prosecutor's conduct was "unlawful," that it should not "influence your mind," and the fact that the question was asked, "should have no influence upon your mind whatever."

In the first of the cases considered this court was of the opinion that the error, growing out of the misconduct of counsel, could not be cured; in the last-

cited cases no attempt was made to cure the error. Cases belonging to this class might be multiplied. Illustrative of cases where the error growing out of the misconduct of counsel has been held to be cured by the instructions of the trial judge are *Gallant* v. *Miles,* 200 Mich. 532; *Goldman* v. *Railway,* 200 Mich. 543; *Merrill* v. *Tinkler,* 160 Mich. 575; *Wheeler* v. *Jenison,* 120 Mich. 422; *Devich* v. *Dick,* 177 Mich. 173; *Eberts* v. *Mt. Clemens Sugar Co.,* 182 Mich. 449. These cases might also be multiplied. In many cases this court has taken occasion to seriously criticize counsel for improper conduct, but where the trial judge has carefully guarded the rights of the parties, and instructed the jury to disregard the misconduct and such misconduct could be cured, and was cured by the trial court, this court has in such cases declined to reverse the case because counsel in the heat of the trial oversteps the bounds of proper conduct. We think the instant case falls within the latter class of cases. We must assume that the jury was made up of intelligent men, and that they understood the direction of the trial judge to disregard the incident. The seriousness of the charge against the defendant was such as to prompt careful consideration of the instructions of the trial judge. Not only were they told that they should disregard the incident, but in the charge the presumption of innocence was properly stated to them, and they were told that it must be overcome "by evidence in the case convincing you of the fact of guilt beyond a reasonable doubt." The charge was a fair one. There was no request by defendant's counsel that the trial court go farther in cautioning or instructing the jury than he had already done.

Finding no reversible error in the case the judgment will be affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.