PEOPLE v. GORDON

Docket No. 46168. Submitted May 14, 1980, at Marquette.—Decided
July 24, 1980.

Tommy Gordon was convicted of armed robbery and felony-fire-
arm in Recorder's Court of Detroit, George W. Crockett, III, J.
Defendant appeals, alleging that the trial court erred in in-
structing the jury concerning an indorsed but unproduced res
gestae witness. The trial court ruled that the prosecutor failed
to exercise due diligence in producing the res gestae witness
but proceeded to instruct the jury pursuant to the criminal jury
instructions that they should determine whether the prosecutor
exercised due diligence in producing the witness. *Held:*

1. The Michigan standard criminal jury instruction concern-
ing whether the prosecuting attorney used due diligence in
producing an indorsed res gestae witness is disapproved since it
authorizes the trial court to submit the question of due dili-
gence of the prosecutor to the jury. Such a determination must
be made by the court on the record.

2. A jury should be instructed that it may infer that a
missing witness's testimony would have been unfavorable to
the prosecutor's case where the trial court has determined that
the prosecuting attorney failed to use due diligence to produce
an indorsed res gestae witness.

3. The key in determining whether error regarding res gestae
procedures requires reversal of a defendant's conviction is
whether the error resulted in prejudice to the defendant.

Remanded with instructions.

1. WITNESSES — CRIMINAL LAW — RES GESTAE — NONPRODUCTION —
JURY INSTRUCTIONS.

The Michigan standard criminal jury instruction concerning
whether the prosecuting attorney used due diligence in produc-
ing an indorsed res gestae witness is disapproved since it
authorizes the trial court to submit the question of due dili-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 29 Am Jur 2d, Evidence § 180.
75 Am Jur 2d, Trial § 771.
[3] 5 Am Jur 2d, Appeal and Error § 776 *et seq.*

gence of the prosecutor to the jury; such a determination must be made by the court on the record (CJI 5:2:14).

2. JURY — JURY INSTRUCTIONS — WITNESSES — RES GESTAE.

A jury should be instructed that it may infer that a missing witness's testimony would have been unfavorable to the prosecutor's case where the trial court has determined that the prosecuting attorney failed to use due diligence to produce an indorsed res gestae witness.

3. WITNESSES — RES GESTAE — ERROR — PREJUDICE.

The key in determining whether error regarding res gestae procedures requires reversal of a defendant's conviction is whether the error resulted in prejudice to the defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *William L. Morris,* Assistant Prosecuting Attorney, for the people.

*Monsey G. Wilson,* for defendant on appeal.

Before: MACKENZIE, P.J., and BRONSON and ALLEN, JJ.

PER CURIAM. Defendant was bound over for trial on two counts of armed robbery, MCL 750.529; MSA 28.797, one count of assault with intent to rob being armed, MCL 750.89; MSA 28.284, and one count under the felony-firearm statute, MCL 750.227b; MSA 28.424(2). After a jury trial he was convicted on one of the armed robbery counts and on the felony-firearm count and was acquitted of the remaining charges. He was sentenced to a prison term of from 5-1/2 to 15 years on the armed robbery conviction, and to the mandatory two-year consecutive sentence on the felony-firearm conviction. Defendant now appeals by right.

On appeal, defendant's sole assignment of error concerns the trial court's instruction on an in-

dorsed but unproduced res gestae witness. During the course of trial, the prosecution and defense counsel stipulated to the nonproduction of several res gestae witnesses. Defense counsel refused, however, to waive the production of Livia Suffredni. It appears that Ms. Suffredni was present during the armed robbery but was unable to identify the defendant as having been there at the time. It further appears that she was present at a live show-up at which defendant was present, but was unable to identify the defendant.

The prosecution then attempted to explain its efforts in producing the witness, and the trial court held a hearing on the issue of the prosecution's exercise of due diligence at which Sergeant Wilbur Christopher, the officer in charge of the case, was the only witness. The testimony indicated that a subpoena had been prepared but there was no return of service or testimony to indicate it was ever served on Suffredni.[1] Sergeant Christopher testified that he had spoken with both Suffredni and her mother on the telephone about a week or a week and a half prior to the hearing at which time Suffredni was informed of the date of trial. Suffredni reportedly informed the officer that she could not attend the trial because she would be on a class trip to Florida. Sergeant Christopher did not know whether a subpoena had been issued at the time he spoke with Suffredni and her mother. The assistant prosecuting attorney present at the hearing indicated that on the Friday prior to trial he attempted to secure an arrest warrant for Suffredni in order to secure her presence at trial, but that the warrant was denied. The trial

---

[1] The prosecution indicated that the subpoena had been left at Suffredni's house with her brother, although there was no documentation or sworn testimony to substantiate this fact.

court speculated that the warrant was denied because there was nothing to show she had been served with a subpoena. Based on this testimony, the trial court ruled that due diligence had not been demonstrated, and that it would instruct the jury concerning the nonproduction of a res gestae witness.

Despite the fact that the trial court had specifically found a lack of due diligence, it instructed the jury as follows:

"Livia Suffredni is a witness who may have some personal knowledge of the crimes charged, and who might have been able to assist you in determining the outcome of this case. The law requires that the Prosecution make reasonable efforts to produce such witnesses for their testimony.

"This duty is placed on the Prosecutor to insure that all facts and information relative to the alleged crimes are available in court for you, the jury, to hear and judge.

"If you find that the Prosecutor has failed to use due diligence and good faith to produce this witness, Livia Suffredni, then you may infer that this witness' testimony would have been unfavorable to the Prosecutor's case.

"However, if you find that the Prosecutor did exercise due diligence and good faith, and that this satisfies your standards of reasonableness under the circumstances, then you are to determine the case from the testimony which has been offered."

Defense counsel specifically objected to this instruction on the basis that it asked the jury to make a finding on the issue of due diligence even though the trial court had already found a lack of due diligence. The trial court reaffirmed its finding regarding due diligence, but indicated that the

instruction given was from the Criminal Jury Instructions.[2]

It is true that the trial court's instruction is identical to CJI 5:2:14. The prosecution argues on appeal that this instruction was, accordingly, proper and that submission of the question of due diligence to the jury is an appropriate alternative to a determination by the court. The prosecution cites several cases in this regard, although they do not address the issue of whether submission of this issue to the jury is appropriate when it has already been decided by the trial court.[3] They also

[2] The discussion between the trial court and defense counsel was as follows:

"MR. BRAND *[defense counsel]:* Your Honor, on the Court's instruction as to the missing witness, Livia Suffredni, the Court instructed that the jury, in essence, must determine whether or not there is due diligence, and I believe that is a standard that has to be determined by the Court and not by the jury.

"THE COURT: The Court did determine there was no due diligence; that's why I gave the instruction to the jury.

"MR. BRAND: I believe the instruction that the Court gave to the jury was, in essence, that the jury must determine if there is due diligence, and if the jury determines there was not due diligence that they may find that the testimony of that witness would be unfavorable to the Prosecution.

"THE COURT: That's correct.

"MR. BRAND: I believe, as I said before, that duty is on the Court and not on the jury.

"THE COURT: All right. At the risk of repeating myself, I found that there was no due diligence established by the Prosecution in obtaining Livia Suffredni, and for that reason I gave that res gestae instruction to the jury. I told you as well as the Prosecutor that that instruction would be given from the criminal jury instructions and I asked you on at least two occasions if there were any special requests to charge or anything further that you wished given to the jury. You made no response then, and you are making one in an untimely fashion now as far as this Court is concerned, and your objection is noted."

We believe the objection was sufficient to preserve this issue for review. Any error could have been cured by a subsequent instruction before the jury began their deliberations.

[3] *People v Eugene Harris,* 43 Mich App 531; 204 NW2d 549 (1972), *People v Stephen,* 31 Mich App 604; 188 NW2d 105 (1971), *lv den* 384 Mich 843 (1971), *People v Howard,* 24 Mich App 328; 180 NW2d 203 (1970). See also, *People v Dixon,* 46 Mich App 754; 208 NW2d 535 (1973), *People v Kern,* 6 Mich App 406; 149 NW2d 216 (1969).

do not address the question of whether such an approach is proper where, as here, the jury has heard no testimony on the issue.

The key to our decision, however, is much more simply found in the Supreme Court's decision in *People v Willie Pearson,* 404 Mich 698; 273 NW2d 856 (1979), decided just over four months before the trial of the instant case. In *Pearson,* the Supreme Court specifically disapproved CJI 5:2:14 to the extent that it authorized the trial court to submit the question of due diligence to the jury:

"Standard Criminal Jury Instruction 5:2:14 allows the judge to submit the issue of due diligence to the jury. We believe that this procedure should not be utilized. Such a determination is essential to resolve cases where the missing witness is a res gestae witness and there is a guilty verdict. Because the jury would not ordinarily disclose its decision on the issue, we believe that the court must hold the hearing, make a record and state its determination of the issue so that the parties and the court may know whether due diligence was exercised and the reasons for this finding." *People v Pearson, supra,* 722, fn 6.

See *People v Austin,* 95 Mich App 662; 291 NW2d 160 (1980). Under *Pearson,* in a case such as the one presently before us where the trial court finds a lack of due diligence, the jury should be instructed pursuant to the second half of CJI 5:2:14(3) that it may infer that the missing "witness's testimony would have been unfavorable to the prosecutor's case". Then, if the jury returns a guilty verdict, the defendant may seek a new trial on the grounds that he or she was prejudiced by the nonproduction of the witness. *People v Pearson, supra,* 722. It is for this reason that it is important that the court, rather than the jury, decide the issue of due diligence. if the issue were

submitted to the jury and a guilty verdict returned, the defendant could not automatically seek a new trial based on prejudicial nonproduction, as the question of prejudice is not reached unless a lack of due diligence is found and as the jury's verdict would not reveal its finding on that point.

In the instant case, the trial court should not have instructed the jury to determine whether due diligence had been shown. This procedure had been specifically disapproved well before the trial in the instant case. Furthermore, the instruction would have been erroneous under the pre-*Pearson* standard as well. While the old rule allowed the trial court to submit this question to the jury as an alternative to its own determination of the issue, it did not authorize the use of both procedures. Although the error is clear, the question of remedy is more troublesome as the facts of this case do not clearly fit within the various scenarios addressed in *Pearson. Pearson* does emphasize, however, that the key to determining whether error regarding res gestae procedures requires reversal is whether the error resulted in prejudice to the defendant. Accordingly, we believe that the most appropriate remedy is to remand for a hearing pursuant to *Pearson* on the issue of whether defendant suffered prejudice from Suffredni's nonproduction:

"[T]he prosecutor shall have 30 days to seek a hearing to determine the existence of prejudice. The Court of Appeals shall be deemed to have retained jurisdiction to review the hearing record upon application of either party within 30 days of the entry of the judge's order. Should the prosecutor fail to seek a post-remand hearing, within 30 days, the conviction shall be deemed vacated and the prosecutor may proceed with a new trial." *Pearson, supra,* 723-724.

The existence of prejudice should be determined in accordance with the standard set out in *People v Pearson, supra,* 724-726.

Remanded.