PEOPLE v SPENCER

Docket No. 64843. Submitted June 16, 1983, at Lansing.—Decided
    November 21, 1983.

   Duane R. Spencer was convicted of breaking and entering with
   intent to commit larceny and of being a fourth-time felony
   offender, Tuscola Circuit Court, Patrick R. Joslyn, J. Defendant
   appealed, alleging that the prosecutor violated defendant's
   exercise of his privilege not to have his wife testify against him
   and that irrelevant, prejudicial evidence was admitted at trial.
   *Held:*

      1. Defendant presented an alibi defense and claimed that he
   was with his wife at the time of the crime. Prior to trial the
   court had granted a motion to suppress any statements made
   by defendant's wife. At trial, the prosecutor commented upon
   the failure of the wife to testify in corroboration of defendant's
   alibi defense. Defendant's objection was overruled, and his
   subsequent motion for a mistrial was denied. The prosecutor's
   allusion to the defendant's failure to call his wife as a witness,
   knowing that defendant had invoked the marital privilege, was
   prejudicial, and the overruling of defendant's objection was
   error.

      2. The court erred in allowing admission of references to the
   defendant's prior incarceration.

      3. The court erred in admitting letters allegedly written by

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 10] 75 Am Jur 2d, Trial § 248.
   81 Am Jur 2d, Witnesses § 148.
   Propriety and prejudicial effect of prosecutor's argument comment-
      ing on failure of defendant's spouse to testify. 26 ALR4th 9.
[3] 29 Am Jur 2d, Evidence § 320.
[4] 29 Am Jur 2d, Evidence §§ 291, 363.
   81 Am Jur 2d, Witnesses § 662 *et seq.*
[5] 76 Am Jur 2d, Trial §§ 1078, 1080.
[6] 76 Am Jur 2d, Trial § 1080.
[7] 75 Am Jur 2d, Trial §§ 75, 76.
[8] 58 Am Jur 2d, New Trial §§ 29, 33.
[9] 21 Am Jur 2d, Criminal Law § 192.
   75 Am Jur 2d, Trial § 247.

defendant to the principal prosecution witness. The letters were irrelevant to the purpose for which they were admitted and were never properly authenticated. They constituted inadmissible hearsay.

4. The trial court, given its clear awareness of the errors in the trial, should have declared a mistrial. Furthermore, the trial court erred by failing to determine as a matter of law whether the errors which occurred at trial were harmless beyond a reasonable doubt.

Reversed and remanded.

R. I. COOPER, J., concurred, although he would hold that the prosecutor's comment regarding defendant's wife's failure to testify was not error because any testimony she would have given regarding the defendant's being with her at the time of the crime would not be within the marital privilege, nor would it have violated the terms of the suppression order. Further, by naming his wife as an alibi witness, the defendant consented to her testifying as to his presence with her at the time of the crime. In all other respects Judge COOPER concurred with the majority.

## OPINION OF THE COURT

1. CRIMINAL LAW — MARITAL PRIVILEGE — PROSECUTING ATTORNEYS.
   A prosecutor may not comment upon a defendant's reliance on or exercise of the privilege not to have his spouse testify against him; therefore, although a prosecutor may comment on a defendant's failure to call a corroborating witness, he may not do so when failure to call the witness is the result of the defendant's exercise of the marital privilege.

2. CRIMINAL LAW — MARITAL PRIVILEGE — PROSECUTING ATTORNEYS.
   The prosecution has a duty not to violate the marital privilege of a defendant in the absence of the defendant's express consent.

3. CRIMINAL LAW — EVIDENCE — DEFENDANT'S PRIOR INCARCERATION.
   References to a defendant's prior incarceration are generally inadmissible unless specifically ruled otherwise.

4. CRIMINAL LAW — EVIDENCE — DEFENDANT'S POVERTY.
   Evidence of a defendant's poverty or unemployment may not be used as evidence of his credibility or intent.

5. CRIMINAL LAW — MISTRIAL — FAIR TRIAL.
   A trial court has a duty, upon proper motion, to declare a

mistrial in order to control the trial and to protect the rights of the defendant in a trial wherein error and mistake are egregious; the test for determining whether a mistrial should be declared is not whether there were some irregularities but whether the defendant had a fair and impartial trial.

6. MOTIONS AND ORDERS — MISTRIAL — APPEAL — DENIAL OF MISTRIAL — CRIMINAL LAW.

Denial of a motion for a mistrial is within the sound discretion of the trial judge and will not be reversed by the Court of Appeals unless the denial constituted an abuse of discretion; such an abuse of discretion must be found to have deprived the defendant of a fair trial and to have resulted in a miscarriage of justice in order to constitute error requiring reversal.

7. TRIAL — QUESTION OF LAW.

The trial court is required to rule on all questions of law.

8. NEW TRIAL — LIKELIHOOD OF ACQUITTAL.

A new trial may be warranted where it appears that if a new trial is ordered, during which the serious mistakes occurring in the first trial are not repeated, the defendant may very well be acquitted.

CONCURRENCE BY R. I. COOPER, J.

9. CRIMINAL LAW — ALIBI — FAILURE TO PRODUCE WITNESSES.

*A prosecutor has a right to comment on a defendant's failure to produce alibi witnesses.*

10. CRIMINAL LAW — ALIBI — MARITAL PRIVILEGE.

*A defendant, by naming his wife as an alibi witness, consents to her testifying as to his whereabouts at the time of the offense with which he is charged and he may not then invoke the marital privilege to block the prosecution from inquiring into his alibi.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Artis M. Noel,* Prosecuting Attorney, and *Jo Ellen O'Connor,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ronald J. Bretz),* for defendant on appeal.

Before: M. J. KELLY, P.J., and SHEPHERD and
R. I. COOPER,* JJ.

SHEPHERD, J. Defendant was convicted by a jury
of breaking and entering with intent to commit
larceny, MCL 750.110; MSA 28.305, and of being a
fourth-time felony offender, MCL 769.12; MSA
28.1084, for which he was sentenced to a term of
from 15 to 65 years imprisonment. On appeal,
defendant raises two allegations of error and ar-
gues that reversal of his convictions is necessary
on both. We agree.

### FACTS

In the early morning hours of July 7, 1981, the
restaurant of the Rainbow Motel in Tuscola
County was broken into and several items taken,
including tools and two television sets. Defendant,
who was on parole at the time, lived in an apart-
ment at the motel with his wife and two children.

Thomas Caruthers, who had stayed off and on at
the motel with defendant and his family, was
arrested in October, 1981, for the unrelated theft
of defendant's wife's purse and other property
belonging to defendant and another resident of the
motel. Shortly after his arrest, Caruthers con-
fessed to the July 7 breaking and entering at the
Rainbow Motel and also implicated defendant and
his wife in that crime.

Approximately one month later, Caruthers re-
tracted his implication of defendant and his wife,
attributing his accusation to his anger at the
Spencers for pressing charges for the theft of their
property. In a subsequent statement, he also de-
nied his own involvement in the breaking and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

entering. At trial, however, Caruthers was the chief prosecution witness and testified that he and the Spencers had committed the crime. Caruthers had previously pled guilty to larceny in a building as part of a plea bargain in which he was promised a sentence of no more than one year in the county jail and the dismissal of two other larceny charges in return for his testimony against the Spencers in the instant case.

Defendant's wife was tried separately and had her own appointed counsel.

Prior to trial, the trial judge granted defendant's motion to suppress evidence of his prior convictions on the ground that they were not admissible under MRE 609 because they were similar to the charge pending against him and would be more prejudicial than probative. All three prior convictions were for breaking and entering with intent to commit larceny. The trial judge also granted defendant's motion to suppress all statements made by defendant's wife on the basis of marital privilege and because, as a co-conspirator, her post-crime statements constituted inadmissible hearsay.

On appeal, it is claimed that comments by the prosecutor violated defendant's exercise of his marital privilege and that irrelevant, prejudicial evidence was improperly admitted. These claims will be considered serially below.

I

Prior to trial, the trial judge entered an order granting defendant's motion to suppress any statements made by his wife. At trial, defendant presented an alibi defense, claiming that he was in his apartment with his wife at the time the crime

occurred. During rebuttal, the prosecutor pointed
out to the jury the lack of corroboration of defen-
dant's alibi, and stated: "Only one person knows
what they were doing at 1:30 in the morning
* * *." Before the prosecutor could finish his state-
ment, defense counsel objected, stating that he was
anticipating what was coming and that the prose-
cutor had to "stick to the evidence". The trial
judge overruled the objection, stating that he had
already cautioned the jury to disregard representa-
tions made by the attorneys in closing argument
which were not supported by the facts. The prose-
cutor then completed his argument to the jury,
again referring to Mrs. Spencer's absence: "We
didn't hear her testimony. She's the only person
there who could testify as to what happened at
that time."

After the jury had been instructed, defendant
renewed his objection to the prosecutor's refer-
ences to the absence of defendant's wife and
moved for a mistrial. The trial court took the
motion under advisement, stating:

*[The Court]:* I can't see where there is prosecutorial
misconduct on the part of a prosecutor to make refer-
ence to the fact that there were other witnesses present
who could substantiate the defendant's story, okay. Oh,
also, I'm well aware of the fact that she's charged with
a crime, and the prosecutor can't call her to the stand
in this case. So that's an interesting dilemma, if you
will.

* * *

"[I]t's not only husband and wife privilege, but that's
a whole different area of law. She's a codefendant.
Doesn't have anything to do with husband and wife. A
codefendant's statement, admission or confession, if not
on trial, is inadmissible. * * * Husband and wife privi-
lege could be waived by him calling her to the stand.
And that doesn't involve confessions, statements or

admissions, it involves conversations in confidence be-
tween husband and wife. Doesn't have anything to do
with the admission of—anyway, I think we've got every-
thing on the record."

On the day of sentencing, defendant's motion for
mistrial was argued and denied.

Michigan's marital privilege statute provides
that:

"A husband shall not be examined as a witness for or
against his wife without her consent; nor a wife for or
against her husband without his consent * * *." MCL
600.2162; MSA 27A.2162.

Various exceptions to this rule are listed within
the statute, none of which apply here.

Although the prosecutor may comment on a
defendant's failure to call a corroborating witness,
*People v Ovegian,* 106 Mich App 279; 307 NW2d
472 (1981), he may not do so when failure to call
the witness is the result of the defendant's exer-
cise of his marital privilege. This is so because a
prosecutor may not comment upon a defendant's
reliance on, or exercise of, the privilege. *People v
Werner,* 225 Mich 18; 195 NW 697 (1923); *People v
Osborn,* 205 Mich 531; 171 NW 471 (1919);
*Knowles v People,* 15 Mich 408 (1867); *People v
Johnston,* 76 Mich App 332; 256 NW2d 782 (1977).

In *Knowles,* the Supreme Court required rever-
sal of defendant's conviction because the trial
court refused to instruct the jury that the defen-
dant's failure to call his wife as an alibi witness
could not be used against him because of the
spousal privilege. In *Osborn,* although the Court
viewed a prosecutor's questioning of a witness as
to whether a defendant's wife was present in the
courtroom as improper, the trial court's curative

instructions to the jury were held to be sufficient to correct the error. There the lower court informed the jury that the prosecutor's remarks were improper and his conduct unlawful, and stated that the jury should remain uninfluenced by the comments. The trial court was found, therefore, to have "carefully guarded the rights of the parties". *Osborn, supra,* p 538.

Citing *Osborn,* this Court, in *People v Johnston, supra,* declined to review a prosecutor's impermissible comments on a defendant's failure to call his wife to support his alibi defense because the defendant had raised no objection to the remarks at trial. The Court found that a cautionary instruction occasioned by an objection would have cured any error. *Johnston, supra,* p 341.

Two facts distinguish the instant case from *Osborn* and *Johnston.* First, defendant did object to the prosecutor's reference to defendant's failure to call his wife to testify. The trial judge's instructions to the jury, however, did not address the prosecutor's improper reference to defendant's exercise of a privilege. Second, defendant had clearly invoked the marital privilege prior to trial when the order was issued suppressing any statements made by defendant's wife. Although defendant did not originally assert marital privilege as the basis for his objection, the privilege had been invoked in requesting the suppression order. Further, defendant did assert the privilege immediately after the jury had been instructed as the basis for his objections to the prosecutor's remarks. The judge at that time overruled the objection, stating that the spousal privilege had nothing to do with the facts of this case. Given the position taken by the trial judge, any request for a cautionary instruction would have been futile.

Even more important, however, we find that defendant had no duty to affirmatively invoke the marital privilege at the precise moment of objection in order for the prosecutor to be barred from referring to defendant's wife's absence. As the Court ruled in *People v Werner, supra,* and as appears from the language of the statute, the prosecutor is charged with a duty not to violate the privilege in the absence of defendant's express consent:

"The exclusion of a husband from being a witness against his wife, in this kind of a case, stands as a complete bar, unless she consents, and it constitutes error to compel the defendant in the presence of the jury to assume the attitude of keeping out testimony, only admissible by virtue of her consent. The statute applicable to this case provides:

" 'A husband shall not be examined as a witness for or against his wife without her consent * * *.' 3 Comp Laws 1915, § 12555.

"This does not mean that a wife, to have the benefit of the statute, must exhibit her want of consent to the jury by way of objection. The statute excludes unless consent is given. This the prosecutor knew. He had no consent. Under the circumstances above stated it was reversible error to compel defendant, in order to preserve her right under the statute, to object to the violation of the statute and thereby be placed in the position of keeping testimony from the jury." *Werner, supra,* p 22.

In the present case, the prosecutor was well aware that defendant had not consented to waiver of the privilege. The privilege had been asserted by the defendant as one of the bases for his motion to suppress and it was clear to all that defendant would not call his wife to testify.

In addition to the error inherent in the prosecutor's impermissible reference to defendant's ex-

ercise of a privilege, we also find error in the prosecutor's effective circumvention of a specific court order. The trial court ruled that any statements made by defendant's wife were inadmissible at trial. The purpose of such an order is in large part defeated where a prosecutor is allowed to comment freely on the potential witness's failure to testify. We cannot condone this functional disregard of a court order.

The prosecutor's allusion to defendant's failure to call his wife was prejudicial and may have influenced the jury. Its admission and the overruling of defendant's objections constituted error.

## II

We also find error in the second argument raised by defendant: that prejudicial testimony regarding defendant's prior incarceration and unemployment, as well as letters containing "threats" he allegedly made to a prosecution witness, were improperly admitted by the trial court.

A. Prior incarceration and unemployment.

Prior to trial, a suppression order was entered barring reference by the prosecutor to defendant's prior convictions because of their similarity to the instant crime. At trial, during questioning by the prosecutor, several witnesses referred to the fact that defendant had been in jail previously. Although the nature of the crimes for which defendant had previously been convicted was not revealed to the jury, the fact that defendant had been in prison was itself highly prejudicial. Adding to this prejudicial effect was the statement by the owner of the Rainbow Motel, upon questioning by the prosecutor, that defendant was unemployed. The remarks were objected to by defense counsel

out of the presence of the jury. The trial judge
agreed that the remarks were irrelevant and prej-
udicial and informed the prosecutor that continued
reference to such matters would result in a mis-
trial. Subsequently, however, the prosecutor asked
two witnesses whether they had spoken to defen-
dant "in jail". The trial judge denied defendant's
renewed motion for a mistrial.

References to a defendant's prior incarceration
are, unless specifically ruled otherwise, generally
inadmissible. *People v McPherson,* 21 Mich App
385, 398; 175 NW2d 828 (1970). See, also, *People v
McGee,* 90 Mich App 115, 116-117; 282 NW2d 250
(1979), *lv den* 407 Mich 933 (1979). Nor can evi-
dence of a defendant's poverty or underemploy-
ment be used as evidence of his credibility or
intent. *People v Henderson,* 408 Mich 56, 66; 289
NW2d 376 (1980).

All references to either of these prejudicial mat-
ters were in response to questioning by the prose-
cutor. References to defendant's incarceration
were elicited even after the prosecutor had been
cautioned by the trial judge. The solicitation of
these remarks and their submission to the jury
clearly constituted error.

B. Letters to Caruthers.

We also find error in the admission of "threaten-
ing" letters purportedly written by defendant and
sent to witness Caruthers while both were in jail.
Caruthers testified that, while in jail, he had been
given the letters by a trusty who told him, "These
are from Duane". The prosecutor offered the let-
ters to rehabilitate Caruthers after Caruthers had
been impeached by three exculpatory letters he
had written absolving defendant of complicity in
the breaking and entering within two weeks of
making his inculpatory statement. In his exculpa-

tory letters, Caruthers indicated that he had implicated defendant and his wife because he was angry at them for pressing charges against him for stealing Mrs. Spencer's purse. The trial judge overruled defendant's hearsay objection to the letters allegedly written by defendant, finding that they were not hearsay because they were probative of Caruthers's state of mind at the time he made the inconsistent exculpatory statements and were not being admitted for the truth of the matter asserted. This was incorrect.

It was uncontroverted at trial that Caruthers made his statements exculpating defendant at least one month before he received the "threatening" letters. Those letters, therefore, could not have influenced Caruthers's state of mind at the time he retracted his implication of the Spencers since the threatening letters were not even in existence then. Thus it is clear that the letters were not relevant to Caruthers's earlier state of mind and as a result were inadmissible since irrelevant evidence must be excluded. MRE 402; *People v Hoag,* 113 Mich App 789; 318 NW2d 579 (1982). We cannot consider this error harmless. Central to this trial was the credibility contest between defendant and Caruthers. The only evidence implicating defendant in the crime was Caruthers's testimony. The threatening letters bolstered Caruthers's credibility when they were in fact irrelevant as to that issue. Further, they may have conveyed to the jury the impression that defendant was a "bad man" (a matter totally unrelated to defendant's guilt or innocence of the crime charged) and thus deserving of conviction. This is impermissible. See MRE 404(b); *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973).

We also note two other objectionable aspects of the admission of the letters. First, the letters were

never properly authenticated as provided by MRE 901, which requires identification or authentication of items by introduction of evidence "sufficient to support a finding that the matter in question is what its proponent claims". Although the prosecutor consistently argued that defendant had authored the letters to Caruthers, there was never any proper showing that defendant had in fact written them.

Second, what little identification evidence was offered consisted of inadmissible hearsay. Caruthers testified at trial that he had been given the letters by a jail trusty named Bill. The prosecutor then asked, "Did Bill indicate that he wrote those?" Caruthers replied, "No. He just said, 'These are from Duane.' He said, 'Read them' ".

Although defense counsel did not object to this particular instance of inadmissible hearsay, the trial judge later pointed out to both attorneys that this evidence was actually inadmissible and highly prejudicial. We agree. Although generally the admission of hearsay evidence where there is no objection will not be considered error, the prejudicial nature of this evidence, when coupled with the corollary errors found here, requires that we find otherwise.

### DUTY OF THE TRIAL JUDGE TO CONTROL PROCEEDINGS

The trial judge is assigned "the duty * * * to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved". MCL 768.29; MSA 28.1052. Defense coun-

sel offered a continuing motion for mistrial, which was ultimately denied by the trial court. We are of the opinion that, where error and mistake are egregious, the trial court maintains a duty upon proper motion to declare a mistrial in order to control the trial and to protect the rights of the defendant. The test to be used in determining whether a mistrial should be declared is not whether there were some irregularities but whether defendant had a fair and impartial trial. *People v Watson,* 307 Mich 596; 12 NW2d 476 (1943), *cert den* 323 US 749; 65 S Ct 81; 89 L Ed 600 (1944), *reh den* 323 US 815; 65 S Ct 127; 89 L Ed 648 (1944). It is clear from the record that the trial judge realized defendant's trial was flawed. In ruling upon defense counsel's motion for mistrial after a witness's statement that defendant was on parole at the time of the crime, the trial judge stated:

"This case has been very trying for me, because I feel that counsel both could go take some lessons and take some instructions on the Michigan Rules of Evidence.

"There was some testimony illicited *[sic]* from the last witness on the stand that was highly prejudicial and totally inadmissible, and not objected to by * * * (defense counsel). And that is, 'What did * * * [trusty] say when he gave you the letter?' 'Answer it is from the defendant', words to that effect. Inadmissible, hearsay, highly prejudicial, not objected to.

"* * * [N]ow I've got a situation where the jury knows—I think they probably know that the defendant at that time when he's staying at the motel is on parole. That only means one thing to the ordinary person. You know, I really can't see how that can be avoided.

* * *

"I'm suggesting though to you both that, on the record, that you ought to take some seminars.

* * *

"The question before the court is whether or not the last statement made by this witness will so taint the trial that the defendant doesn't have, and would not have the opportunity to have a fair and impartial trial by virtue of that testimony. And I threw in some of the other problems I was having in this case, because I view the motion for a new trial in light of everything that has happened in the trial up to that point."

Given the trial judge's awareness of the errors which marred this trial, we are of the opinion that he should have declared a mistrial.

Denial of a mistrial motion is within the sound discretion of the trial judge and will not be reversed by this Court unless such denial constituted an abuse of discretion. *People v Robertson,* 87 Mich App 109; 273 NW2d 501 (1978); *People v Denmark,* 74 Mich App 402; 254 NW2d 61 (1977). In order to find reversible error, the trial court's denial of defendant's mistrial motion must be found to have deprived defendant of a fair trial and to have resulted in a miscarriage of justice. *People v Ritholz,* 359 Mich 539, 559; 103 NW2d 481 (1960); MCL 769.26; MSA 28.1096. Such a miscarriage of justice occurred in the present case. The error which pervaded this trial deprived defendant of the opportunity to have a fair and impartial trial. Accordingly, we reverse defendant's convictions.

One other incident evincing the trial court's failure to control the proceedings is worth noting. After the jury had found the defendant guilty as charged, and prior to discharge, the trial judge asked the jurors three questions in order to determine whether they had been prejudiced by certain improper testimony: "1) Did the fact that [the motel owner's daughter] * * * said 'Mr. Spencer

was on parole' affect your deliberations in this matter in any way? 2) Did the fact that [a witness] said '* * * [h]e did not discuss his testimony with Mr. Spencer in the holding cell at the county jail' affect your deliberations in this matter in any way? 3) Did the fact that Mr. Caruthers said that he received the threatening letters from [trusty] who related to him that those letters came from the defendant, Mr. Spencer, enter into or affect your deliberations in the matter in any way?" The jury responded in the negative to all three questions.

The trial judge's duty to control trial proceedings includes the requirement that the judge rule on all questions of law. See *People v Serra,* 301 Mich 124; 3 NW2d 35 (1942); *People v Gordon,* 99 Mich App 142; 298 NW2d 8 (1980), and *People v Corbeil,* 77 Mich App 691; 259 NW2d 193 (1977). By relying solely on the jury's answers to the questions asked of them after reaching the verdict, the trial judge failed to determine as a matter of law whether the errors which occurred at trial were harmless beyond a reasonable doubt. This was a legal question required to be answered by the trial court. See, *i.e., People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972); *People v Sykes,* 117 Mich App 117; 323 NW2d 617 (1982).

Where serious mistakes occur which may well have affected the outcome of the trial, a new trial may be warranted. This is so where it appears that "if a new trial is ordered during the conduct of which the mistake is not repeated the defendant may very well be acquitted". *People v Bottany,* 43 Mich App 375, 379; 204 NW2d 230 (1972), quoting *People v Degraffenreid,* 19 Mich App 702, 718; 173 NW2d 317 (1969). The instant case substantially revolved around the credibility contest between

defendant and witness Caruthers. Prior to trial,
Caruthers had changed his mind several times on
the subject of defendant's involvement in the
crime. Caruthers himself had expressed a possible
motive for fabrication of the story implicating
defendant. As in *Bottany, supra,* the "hard" evi-
dence was weak. Considerable prejudicial testi-
mony was improperly brought out at trial. The
cumulative effect of the admission of this evidence
and the trial court's improper handling of the
mistrial motion by questioning the jury rather
than reaching an independent determination can-
not be considered harmless and requires reversal.
See *People v Bairefoot,* 117 Mich App 225; 323
NW2d 302 (1982). The injection of prejudicial and
irrelevant testimony in a closely contested case
such as this deprived defendant of his right to a
fair trial. In the last analysis this was a trial
which got out of hand. All of the attempts by the
trial court to prevent error were laudable but
simply inadequate to overcome the pervasive error
which occurred with such frequency and with such
severity that defendant's right to a fair trial was
destroyed.

Defendant's convictions are, therefore, reversed
and the matter is remanded for a new trial.

M. J. KELLY, P.J., concurred.

R. I. COOPER, J. *(concurring).* The prosecutor in
his closing argument stated as follows:

"We didn't hear her testimony. She's the only person
there who could testify as to what happened at that
time."

The prosecutor was referring to the fact that the
defendant's wife had not testified even though the

defendant had named her as an alibi witness. The defense argued that the closing comments by the prosecutor violated the trial judge's order which granted defendant's motion *in limine* prohibiting the introduction of any testimony regarding statements made by defendant's wife.

The pertinent statutory language reads as follows:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent * * *." MCL 600.2162; MSA 27A.2162.

The trial judge's order granting defendant's motion *in limine* reads in pertinent part as follows:

"It is hereby ordered that any statements made by Sharri Spencer, codefendant of Duane Spencer, shall be and the same are hereby suppressed at the trial of Duane Robert Spencer, defendant herein."

I believe the trial judge was correct in overruling defendant's objection to the prosecutor's remarks concerning the wife's failure to testify. The trial judge observed that spousal privilege had nothing to do with the facts of the case. The trial judge had ordered that any statements of the wife would not be allowed. However, he did not deny the prosecutor the right to make comments about the defendant's claim that he was with his wife during the time of the crime.

Where a person claims an alibi, the prosecutor has a right to comment upon the failure to produce alibi witnesses. I do not find that the trial

judge's conclusion was in conflict with the above cited statute stating that a wife shall not testify against her husband without his consent. In fact, it could be strongly emphasized that, by naming her as an alibi witness, it is clear that defendant consented to her testifying as to his presence at the time of the alleged breaking and entering. Any testimony she might have provided regarding his being with her in their motel room at the time of the breaking and entering would have been testimony on his behalf. Further, to testify as to his presence or activities at the time of the breaking and entering would not reveal any confidential conversations shared between the husband and wife. Again, the judge's order would thus not have been violated. It would be inconsistent to allow a defendant to claim his wife as an alibi witness, which by itself results in his giving consent, and yet then state that he may invoke spousal privilege and thereby block the prosecutor from delving into his alibi. I do not feel this principle, as applied by the trial judge, is any less valid than the principle that if a defendant testifies he waives his right to remain silent during cross-examination.

While I realize case law favors the majority opinion, I believe the subject should be reconsidered due to the reasoning expressed above.

Regarding other matters covered by Judge SHEP-HERD, I concur with his conclusion as to the error of allowing testimony regarding the defendant's prior incarceration and unemployment. Also I concur with his conclusion regarding the error of admitting the alleged "threatening letters". For the latter reasons, defendant's convictions should be reversed and the matter remanded for a new trial.