# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHIRAM MILTON ARMSTEAD,

      Defendant-Appellant.

UNPUBLISHED
September 14, 2017

No. 333434
Wayne Circuit Court
LC No. 15-006182-01-FC

Before: GADOLA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Defendant was charged with alternative counts of first-degree premeditated murder, MCL 750.316(1)(a), and first-degree felony murder, MCL 750.316(1)(b). The jury found defendant guilty of first-degree murder under both theories. At sentencing, the trial court vacated the felony-murder conviction and sentenced defendant to a single term of life imprisonment without parole for the premeditated murder conviction. Defendant was also convicted of first-degree home invasion, MCL 750.110a(2), and torture, MCL 750.85, for which the trial court sentenced him to concurrent prison terms of 3 to 20 years for the home invasion conviction and 290 to 600 months for the torture conviction. Defendant appeals each of his convictions. We affirm.

## I. BACKGROUND

Defendant's convictions arise from a brutal attack on the victim, Eleanor Blevins, after a group of three men broke into her motel room. On the evening of July 4, 2015, defendant, Johnny Davis, and Kyle Kelly arrived at the Victory Inn in Detroit and began pounding on the windows and doors of a motel room. As the three men were attempting to break into her motel room, the victim called 911 requesting assistance. Eventually, defendant was able to push open a window. He entered the room, opened the door, and the other two followed him in, while the victim remained on the phone with 911.

A recording of the 911 call was played for the jury and indicated that, shortly after gaining entrance, someone asked the victim for money. When the victim responded that she did not have any money, the person told her that she "got to die then." At that point, defendant began to beat severely the victim and strangle her, eventually causing her death. Much of what happened was recorded on the motel's video-surveillance system. Videos from this system were played for the jury and showed defendant breaking into the motel room. On one video, defendant could be seen pushing the victim down, and punching and kicking her as the motel

-1-

door swung open and shut several times. On another video, Kelly could be seen walking away from the room carrying a purse, and Davis could be seen wiping trace evidence from the door handle.

Officers Grima and Mart were first to arrive on scene. Both officers testified that, when they arrived, the victim was gasping for air, although she did not have a pulse. Nonetheless, an Emergency Medical Services report entered into evidence indicates that the victim was dead when emergency personnel arrived on scene. The medical examiner testified that the victim had several lacerations to her face, neck, and back, a broken nose, deep tissue and muscle hemorrhages around the neck, subcutaneous bruising on her forehead, and hemorrhaging on her brain. The trial court accepted into evidence photographs depicting the various injuries. According to the medical examiner, the victim's death was caused by strangulation, which would cause death within three or four minutes.

Officer Dabliz testified that he viewed the surveillance video and identified more than one person with whom he was familiar. According to Officer Dabliz, he then accessed three Facebook pages for the people he saw in the surveillance video and located a photograph of defendant and the two accomplices on defendant's Facebook account. In an attempt to establish the foundation for admission of that photograph, the prosecution asked Officer Dabliz "when [he] pulled [the photograph] up on social media." Officer Dabliz responded that defendant had "a Facebook page called Woody-Wood, that I already knew about from prior experience and prior investigations." Officer Dabliz identified defendant in the photograph, testified that defendant was the person he saw in the video, and indicated that defendant was wearing the same clothing in the photograph and the video.

The prosecution questioned another officer, Officer Murphy, about the events leading up to defendant's arrest. Specifically, the prosecutor asked Officer Murphy whether he knew defendant before his arrest, and how many times he had contact with him. Officer Murphy responded that he had been in contact with defendant "[n]umerous times" and, when pressed by the prosecutor to explain "how many," Officer Murphy testified that he had "stopped [defendant and his . . . friends probably once every other day."

In opening statement, and closing argument, defense counsel acknowledged that defendant broke into the motel room, and was involved in a fight with the victim. Defense counsel disputed, however, whether defendant acted with premeditation and whether defendant strangled the victim. According to defense counsel's theory, defendant believed that his friend had rented the room and that the victim was trespassing there. As indicated above, the jury found defendant guilty of each offense as charged.

Defendant now raises several evidentiary issues on appeal, none of which entitle him to any relief.

## II. ANALYSIS

*Defendant's Challenge to His Felony-Murder Conviction Is Moot.* First, defendant argues that his felony-murder conviction should be vacated because the evidence was insufficient to show that the victim was killed during the commission of a specified felony. MCL

750.316(1)(b). Defendant's challenge is, however, moot. The jury found defendant guilty of alternative counts of first-degree premeditated murder, and first-degree felony murder predicated on the felonies of first-degree home invasion and torture. Defendant does not challenge the sufficiency of the evidence as it relates to the offenses of first-degree premeditated murder, first-degree home invasion, and torture; he only contends that the evidence was insufficient to sustain the verdict of first-degree felony murder.

In this case, the trial court vacated defendant's felony-murder conviction and sentenced him to life without parole for the conviction of first-degree premeditated murder. The judgment of sentence sets forth a single conviction and sentence for first-degree murder and it does not reference any alterative theories. Because defendant's conviction of first-degree felony murder has already been vacated and he was not sentenced for first-degree murder under that alternative theory, this issue is moot as there is no relief available to defendant. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

*Defendant's Evidentiary Challenges Are Without Merit*. Defendant next argues that he was denied a fair trial due to the admission of certain prejudicial testimony, and that defense counsel was ineffective for failing to object to the testimony and failing to move for a mistrial. We review defendants unpreserved evidentiary claims for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An unpreserved error affects a defendant's substantial rights when it is prejudicial, i.e., when it affects the outcome of the trial court proceedings. *Id*. at 763. Similarly, our review of defendant's unpreserved ineffective assistance of counsel claim "is limited to mistakes apparent from the record." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

*References to Prior Police Contact Did Not Affect Defendant's Substantial Rights*. "[P]rosecutors and police witnesses have a special obligation not to venture into forbidden areas of testimony which may prejudice the defense." *People v McCarver (On Remand)*, 87 Mich App 12, 15; 273 NW2d 570 (1978). References to a defendant's prior criminal acts "are, unless specifically ruled otherwise, generally inadmissible." *People v Spencer*, 130 Mich App 527, 537; 343 NW2d 607 (1983). Yet "not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial." *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999). "[A]n isolated or inadvertent reference to a defendant's prior criminal activities will not result in reversible prejudice," but "deliberate and repeated efforts by the prosecutor" to bring such matters to the jury's attention can warrant the declaration of a mistrial. *People v Wallen*, 47 Mich App 612, 613; 209 NW2d 608 (1973).

"As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony," *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). Still, even this rule is not steadfast and a mistrial may be warranted when "the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988).

Defendant first claims that Officer Dabliz's testimony that he knew defendant from prior investigations would have warranted a mistrial, and now warrants vacating his convictions. We

disagree. In attempting to establish a foundation for admission of a photograph, the prosecutor asked Officer Dabliz what he did when he found the photograph on social media. The officer responded that he went to defendant's Facebook page "that I already knew about from prior experience and prior investigations." This information was not responsive to the question asked, which related to what Officer Dabliz did after he found the picture on Facebook, and there is nothing in the record to suggest that the prosecutor knew that Officer Dabliz would mention how he knew about defendant's Facebook page or that the prosecutor encouraged him to mention it. That Officer Dabliz's testimony was unresponsive to the question asked weighs against declaring a mistrial.

Further, Officer Dabliz's testimony on this point was not so prejudicial that a mistrial would have been the only avenue to limit its detrimental effect. Because Officer Dabliz was a police officer assigned to the Gang Intelligence Unit, the jury may have inferred that his "prior investigations" of defendant were related to criminal activity. Officer Dabliz, however, did not indicate that defendant was a gang member or that defendant himself had been investigated for gang or criminal activity. It is equally likely that those investigations involved other persons who were linked to defendant on social media, and his investigations of those persons had led him to the discovery of defendant's Facebook page. Moreover, the visual evidence in this case tended to speak for itself. The video showed a person matching defendant's appearance and wearing the exact clothing as defendant is wearing in the photo. Defendant was pictured next to the two other accomplices, who were also wearing the exact clothing as seen in the video. In light of this overwhelming evidence, we are unable to conclude that Officer Dabliz's testimony was so prejudicial as to warrant the extreme remedy of a mistrial below, and a vacation of defendant's convictions on appeal. Indeed, we find that the prejudicial impact of this testimony was minimal and that a limiting instruction, had it been requested, would have been sufficient to expel any prejudice.

Defendant similarly takes issue with Officer Murphy's testimony that he stopped defendant and his friends "probably once every other day." Again, in light of the visual evidence linking defendant to the crimes, we find that Officer Murphy's oblique reference to his prior contact with defendant was not so prejudicial as to affect defendant's substantial rights or warrant a mistrial. We find minimal the prejudicial impact of this testimony, and conclude that a limiting instruction would have expelled any prejudice to defendant.

*Defense Counsel Was Not Ineffective.* Defendant argues in the alternative that his trial counsel was ineffective for not objecting to the officers' testimony and for not requesting a curative instruction. We disagree.

To establish a claim of ineffective assistance of counsel, the defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). To prove deficient performance, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

The decision whether to object to evidence is generally a matter of trial strategy. See *People v Cooper*, 309 Mich App 74, 85; 867 NW2d 452 (2015). Oftentimes, counsel's decision not to raise an objection is a sound strategic decision, so as not to highlight prejudicial testimony. See *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Here, the challenged comments were isolated, and largely unsolicited. Objecting to the comments and requesting a curative instruction would have likely drawn further attention to defendant's past interactions with police. Accordingly, we are unable to conclude that defendant has overcome the strong presumption that defense counsel's decision not to object was sound trial strategy.

Moreover, even were we to conclude that defense counsel's decision not to object was objectively unreasonable, defendant has not shown a reasonable probability that a countervailing strategy would have changed the outcome of his trial. Again, we note that extensive visual evidence documented defendant's involvement in the attacks. We find it unlikely that the jury placed undue or preemptive weight on the officers' isolated comments.

*Officer Dabliz's Identification Testimony Did Not Affect Defendant's Substantial Rights.* Defendant lastly argues that Officer Dabliz improperly invaded the province of the jury when he identified defendant in the surveillance video and in photographs from defendant's Facebook page. A lay witness may offer testimony in the form of "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. If, however, "a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v Drossart*, 99 Mich App 66, 80; 297 NW2d 863 (1980).

Here, whether Officer Dabliz's identification testimony was improper is a close factual question. We need not answer that question, however, because, even if we were to conclude that the testimony was improper, defendant has not shown that the testimony affected his substantial rights. During both opening statement and closing argument, defense counsel acknowledged that defendant broke into the motel room and was involved in a fight with the victim. Defendant's admission makes clear that identity was not in dispute, and, even had defendant not admitted identity, the extensive visual evidence in this case substantially established defendant's identity. Because identity was not a contested issue in the case, there is no basis for concluding that the officer's identification testimony affected the trial's outcome. Accordingly, defendant has not shown plain error and is entitled to no relief.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle