PEOPLE v JOHNSTON

1. Witnesses—Criminal Law—Impeachment—Civil and Criminal Actions—Related Actions—Inquiry—Interest or Bias.

It is reversible error, where civil actions have been commenced on the same matter as the criminal action being tried, for the trial court to refuse to allow inquiry and argument regarding such connected action since the bias or interest of a witness is a proper subject of inquiry.

2. Witnesses—Impeachment—Scope of Cross-Examination—Interest or Bias—Judge's Discretion—Abuse.

The scope of cross-examination of witnesses to show bias or interest rests in the sound discretion of the trial court and does not result in reversible error absent a clear showing of abuse.

3. Witnesses—Rape—Rape Victim—Physical Examination—Res Gestae.

The results of an examination of a victim by a physician following a rape are part of the res gestae essential to the case and the physician is a res gestae witness.

4. Witnesses—Criminal Law—Res Gestae Witnesses—Waiver of Production—Trial Tactics.

The waiver of production of a res gestae witness is a trial tactic within the province of counsel.

References for Points in Headnotes

[1, 2] 81 Am Jur 2d, Witnesses §§ 553, 663–666.
[2] 81 Am Jur 2d, Witnesses § 548.
[3, 5, 6] 29 Am Jur 2d, Evidence §§ 683, 684, 719.
   Admissibility of physicians testimony as to patient's statements or declarations, other than res gestae, during medical examination. 37 ALR3d 778.
[4, 7, 10] 81 Am Jur 2d, Witnesses § 2.
[6, 7] 29 Am Jur 2d, Evidence § 728.
   Declarant's age as affecting admissibility as res gestae. 83 ALR2d 1368.
[7, 10] 29 Am Jur 2d, Evidence § 186.
[8] 81 Am Jur 2d, Witnesses § 111 et seq.
[9] 5 Am Jur 2d, Appeal and Error §§ 553, 557, 896.

5. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—DEFINITION.

A res gestae witness is broadly defined as a witness whose testimony is necessary to illuminate some important aspect of the case.

6. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—INDORSE-MENT—PRODUCTION—RAPE VICTIM'S DAUGHTER—INFANTS.

A 6-1/2-year-old daughter of a rape victim should be indorsed and produced as a witness where complainant testified that the daughter slept in an adjoining bedroom during the time of the alleged rape, woke up and may have seen or heard something that went on.

7. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESS—INDORSEMENT—PRODUCTION—RAPE VICTIM'S DAUGHTER—INFANTS—REMAND—EVIDENTIARY HEARING.

Failure to indorse and produce a rape victim's 6-1/2-year-old daughter for examination regarding her knowledge of the crime where she may have heard or seen something that went on requires a remand to the trial court for an evidentiary hearing to decide if the child has the intelligence to testify and whether her testimony will illuminate an important aspect of the crime or be cumulative.

8. WITNESSES—CRIMINAL LAW—HUSBAND AND WIFE—WIFE AS A WITNESS—JURY—PROOF OF GUILT.

It is error to allow the omission by a husband to call his wife as a witness on his behalf concerning matters supposed to be known by her to be urged to the jury as a circumstance tending to prove his guilt.

9. APPEAL AND ERROR—CRIMINAL LAW—PROSECUTOR'S REMARKS—FAILURE TO OBJECT—CURATIVE INSTRUCTION—ELIMINATION OF PREJUDICE.

Generally, a defendant's failure to object to allegedly improper remarks made by a prosecutor during closing arguments precludes appellate review, unless it can be said that an objection and an appropriate curative instruction could not have eliminated the prejudice arising from the prosecutor's statements.

10. CRIMINAL LAW—ASSISTANCE OF COUNSEL—CONSTITUTIONAL LAW—ALIBI—EFFECTIVE ASSISTANCE STANDARD—WITNESSES—FAILURE TO CALL—COMPETENT TACTICAL REASONS.

A claim that serious and prejudicial error was committed by counsel or that defendant was denied effective assistance of counsel because of counsel's failure to call two witnesses to support defendant's alibi defense is without merit where coun-

sel's failure to call the witnesses was obviously not an oversight but intentional and was induced by competent tactical reasons.

Appeal from Wayne, Richard D. Dunn, J. Submitted March 2, 1977, at Detroit. (Docket No. 27382.) Decided June 20, 1977.

James M. Johnston was convicted of carnal knowledge by force of a female over the age of 16. Defendant appeals. Remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *Edward R. Wilson,* Research, Training and Appeals, for the people.

*Ellen C. Wallaert,* for defendant on appeal.

Before: D. E. HOLBROOK, P. J., and BASHARA and W. F. HOOD,* JJ.

W. F. HOOD, J. Defendant was charged in a single-count information with the crime of carnal knowledge by force of a female over the age of 16 years, MCLA 750.520; MSA 28.788, repealed by 1974 PA 266, effective April 1, 1975. The date of the offense was March 9, 1975.

Following defendant's conviction and sentence, appellate counsel was appointed, which counsel filed a motion for a new trial and, following denial of such motion, brought this appeal as of right.

Defendant raises four issues, which will be discussed separately.

1. Did the trial court reversibly err in limiting defense counsel's cross-examination of the complaining witness regarding a civil suit brought by the complainant?

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The defendant was the assistant manager of an apartment complex in which the complainant resided and where the alleged attack took place. While the complainant was being cross-examined, the following occurred:

"Q. *[by Mr. Wieferman, Defense Counsel]* Isn't it true that you are suing Mr. Johnston for $500,000.00?

"MR. ROBERTS: *[Assistant Prosecuting Attorney]:* Objection, your Honor.

"THE COURT: Sustain the objection.

"THE WITNESS: No.

"THE COURT: Witness, when there is an objection don't answer the question until I rule on the objection.

"MR. WIEFERMAN: Your Honor, I think that question goes directly to the—

"MR. ROBERTS: (Interposing) Excuse me, counsel. If the counsel is going to argue the case, it should be without the jury.

"THE COURT: I already sustained the objection."

Later, defense counsel pursued the same line of questioning:

"Q. Didn't you decide that you wanted to blame this on Mr. Johnston, so you could sue the apartment complex where he works?

"MR. ROBERTS: Again, your Honor, the same objection.

"THE WITNESS: No.

"THE COURT: Well, he is directing these questions for the purpose of testing her credibility and for that reason, I will take the answer and the answer is no.

"Q. (By Mr. Wieferman, continuing): You are suing the apartment complex in this case, aren't you?

"A. For what reason?

"Q. For money.

"A. That is not a reason.

"Q. Did you or did you not file a civil complaint?

"A. Yes.

"Q. Against the apartment complex?

"A. Yes, but not just because of this.

"Q. You are asking for $500,000.00 in this case?

"MR. ROBERTS: Your Honor, you ruled on this.

"THE COURT: I don't think that is pertinent, counsel, and I am going to sustain the objection."

It is a well-settled rule of law in Michigan that where civil actions have been commenced on the same matter as the action being tried, it is reversible error for the trial court to refuse to allow inquiry and argument regarding such connected action since the bias or interest of a witness is a proper subject of inquiry. *People v Field,* 290 Mich 173; 287 NW 422 (1939), *People v Drolet,* 157 Mich 90; 121 NW 291 (1909), *People v Richmond,* 35 Mich App 115; 192 NW2d 372 (1971).

As above noted, however, defendant's counsel succeeded in getting before the jury the fact that complainant had indeed started suit against the apartment complex. Moreover, the trial transcript shows that, without objection, defense counsel referred to the civil suit in his summation when he was discussing reasons why the complainant might have fabricated her accusation against the defendant.

The scope of cross-examination of witnesses to show bias or interest rests in the sound discretion of the trial court and an appellate court will not reverse, absent a clear showing of abuse. *Richmond, supra,* at 121. Although more latitude in the cross-examination of the complaining witness on this subject would have been preferable, we hold that, since defense counsel did succeed in showing the evidence of the civil suit, and was permitted to argue the effect of such suit on complainant's credibility, reversible error did not occur.

2. Was there error because the prosecution failed to indorse as witnesses and produce at the trial certain persons claimed to be res gestae witnesses?

One of such witnesses was the physician who examined the complainant at a hospital the morning of the alleged offense. It has been held in this state that the results of examination by a physician of a victim following a rape are part of the res gestae and essential to the case. *People v Dickinson,* 2 Mich App 646; 141 NW2d 360 (1966). The examining physician is a res gestae witness. *People v Crable,* 33 Mich App 254; 189 NW2d 740 (1971), *Dickinson, supra,* at 652. However, the waiver of production of a res gestae witness is a trial tactic within the province of counsel. *People v Johnson,* 70 Mich App 349; 247 NW2d 310 (1976). The record in this case clearly indicates that immediately prior to the trial defense counsel waived the production of the examining doctor at the hospital, stipulating to the introduction of the hospital record itself. Defendant cannot now be heard to complain.

Defendant claims that plaintiff's parents should have been indorsed and produced. The complainant testified that after defendant raped her and left her apartment she telephoned her father and asked him to come and get her. Her parents arrived in approximately 25 minutes and took her to the hospital. Her parents did not pick complainant up at her apartment. Rather, after defendant left, complainant got dressed and went out to her car to await her father's arrival.

A res gestae witness is broadly defined as a witness whose testimony is necessary to illuminate some important aspect of the case. *People v Jones,* 38 Mich App 512; 196 NW2d 817 (1972). It would

be stretching even this broad definition to find complainant's parents were res gestae witnesses. They were not present at the time and place of the crime; they did not view her apartment; plaintiff had altered her appearance before seeing them; and the parents had no independent knowledge of any of the facts surrounding the commission of the offense. They were, therefore, not res gestae witnesses, and indorsement and production were not required.

Defendant also claims error that the complainant's 6-1/2-year-old daughter was not indorsed and produced as a witness. The complainant testified that such daughter was present in complainant's apartment during the time of the rape. Complainant testified as follows:

"Q. *[by Mr. Roberts]* What did he do?

"A. He chased me.

"Q. Did he catch you?

"A. He—yeah, he came back behind me and dragged me back in the bedroom and I screamed—

"Q. Where was your daughter?

"A. She was in her room sleeping. I was trying to keep quiet because I didn't want to wake her up and have her come in there, but when he did that I just panicked and screamed.

"Q. Was your daughter in the room at that time?

"A. She woke up. He drug me back in the bedroom and slammed the door and she woke up and she was beating on the door crying and said, 'I want to come in', and he was behind me with one arm on the door holding it shut and the other one at my throat and shoving me into the door, and Donna—and she was crying and I said, 'Let me go to her.' He said, 'No. You get her out of here or it's all over for both of you.' And she kept crying and I told her to go to bed and—

"Q. (Interposing) Where were you standing at that time?

"A. I was shoved up against the door.

"Q. In your daughter's room?

"A. No, mine. He drug me back to my room. She said, 'Can I turn on my light?' I said, 'Yes.' And she said, 'I don't want to go back to bed.' And I started yelling, 'If you don't go back to bed I'm going to spank you.' * * * And she was crying and I could hear her running and she got back in her bed and he was really mad at that point.

"Q. Did she finally go back to bed?

"A. I don't know if she ever went to sleep. She got in bed."

It is clear from complainant's testimony that the daughter slept in an adjoining bedroom during the time of the alleged rape; that the daughter woke up and may have seen or heard something that went on.

In *People v Tann,* 326 Mich 361; 40 NW2d 184 (1949), the Supreme Court found an abuse of judicial discretion on the part of the trial court for failing to require the indorsement and production of a witness who the prosecutor knew was outside the office door of a doctor charged with rape from the time the victim entered until she left.

The defendant did move for a new trial in this case, one of the grounds being the failure to indorse and produce claimant's daughter as a witness in the trial. At the hearing on such motion, however, the prosecutor did not produce the daughter for examination regarding her knowledge of the crime, as required by *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973). This cause is, therefore, remanded to the trial court for a supplemental evidentiary hearing on defendant's motion for a new trial. At such evidentiary hearing, the daughter shall be produced and examined regarding her knowledge of the crime. The trial

court shall determine whether her testimony would serve to illuminate an important aspect of the crime, or would merely be cumulative. If the former question is answered in the affirmative and the trial judge should decide that the child has sufficient intelligence and sense of obligation to testify under the mandates of MCLA 600.2163; MSA 27A.2163, a new trial should be ordered.

We do not retain jurisdiction, but either party may take a supplemental appeal from the order of the trial judge with reference to the proceedings pursuant to the evidentiary hearing on the motion for new trial.

3. Did reversible error occur when the prosecuting attorney in his closing argument commented on the failure of the defendant to call his wife as a witness to support his alibi?

The defendant claimed that at the time of the alleged rape he was at the home of his mother-in-law, sleeping with his wife on a couch in the living room. The defendant's wife was listed on the notice of alibi defense submitted by defense counsel. The mother-in-law and two neighbors of the mother-in-law were called as alibi witnesses by defendant's counsel, but defendant's wife was not called.

During closing arguments the prosecutor commented on the defendant's failure to call his wife in support of his alibi:

"But I think more significantly, ladies and gentlemen, is the fact that the person that he claims he was with all during this period of time, the person he slept on the couch with at his mother-in-law's house: Mrs. Johnston, the wife of the defendant. We didn't ever hear one single word of testimony from her either."

In rebuttal the prosecutor remarked:

"No, we won't call Donna as a witness under any circumstance. But compare that to the wife of the defendant for she is the only real alibi witness if, in fact, he has any. He claims he was with her from 4:00 o'clock in the morning until he awakened on that couch. Even though she came down to the courtroom, she didn't testify."

No objection was made to either remark.

Our Michigan Supreme Court long ago held it was error to allow the omission by a husband to call his wife as a witness on his behalf concerning matters supposed to be known by her to be urged to the jury as a circumstance tending to prove his guilt. *Knowles v People,* 15 Mich 408 (1867). In that case, the trial court instructed a jury that the neglect of the defendant to call his wife as an alibi witness may be taken into consideration against him; and the court refused a requested instruction to the contrary.

In the case before us there was no erroneous instruction and no erroneous refusal of a requested instruction. Moreover, there was no objection made to the improper remarks of counsel.

The general rule is that a defendant's failure to object to allegedly improper remarks made by the prosecutor during closing arguments precludes appellate review, unless it can be said that an objection and the appropriate curative instruction could not have eliminated the prejudice arising from the prosecutor's statements. *People v Smith,* 73 Mich App 463; 252 NW2d 488 (1977). In a somewhat similar situation which occurred in the case of *People v Osborn,* 205 Mich 531; 171 NW 471 (1919), our Supreme Court held that an improper question of the prosecutor, concerning the presence and availability of defendant's wife as a witness, was cured by an instruction by the court.

We feel that an instruction could have eliminated any prejudice resulting from the prosecutor's remarks in this case; and, therefore, appellate review is precluded by defendant's failure to object.

4. Did defense counsel make a serious and prejudicial error of judgment in failing to call certain witnesses to support defendant's alibi defense?

Defendant's final claim is that he should be granted a new trial because his trial counsel committed serious and prejudicial error in failing to call two alibi witnesses to testify. These two witnesses were defendant's wife and a friend of defendant with whom defendant claimed to have spent a part of the evening. As previously noted, defendant's counsel did call defendant's mother-in-law and neighbors of the mother-in-law in support of defendant's alibi defense.

In *People v Stevenson,* 60 Mich App 614; 231 NW2d 476 (1975), the Court held that the failure of counsel to call indorsed alibi witnesses was, under the facts of that case, a legitimate trial tactic sufficient to bar a claim of ineffective assistance of counsel.

In the instant case, defense counsel in closing argument to the jury explained his failure to call defendant's wife:

"I could have put the wife on the stand. I don't know what value it would have been to you. I think you would rather hear from a disinterested witness."

He also explained to the jury why he did not call defendant's friend, Roger Winchel:

"Mr. Winchel's testimony, I think, would have no bearing whatsoever. She (complainant) claimed the offense was committed sometime between 4:00 and 4:45.

What can Mr. Winchel tell you about the time between 4:00 and 4:45 if he is asleep in bed? I have got enough people that can testify to the whereabouts of Jim Johnston between 4:00 and 4:45."

Counsel's failure to call the two witnesses was obviously not an oversight but was intentional, and was induced by competent tactical reasons. Employing either the standard of *Beasley v United States,* 491 F2d 687 (CA 6, 1974), (adopted by our Supreme Court in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976)) or *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969), defendant's claim that a serious and prejudicial error was committed by counsel, or that he was denied the effective assistance of counsel, is without merit.

Remanded for proceedings consistent with this opinion.