PEOPLE v MORTON

Docket No. 176888. Submitted May 16, 1995, at Lansing. Decided
    September 8, 1995, at 9:25 A.M. Leave to appeal denied, 450
    Mich —.

    Karl S. Morton was convicted by a jury in the Oakland Circuit
    Court, Jessica R. Cooper, J., of driving while impaired and
    felonious driving in connection with an accident in which
    another motorist suffered a broken collar bone, severe bruises
    and cuts, and whiplash. The injured motorist had to wear a
    neck brace for two weeks and a shoulder brace for a month,
    was unable to move one of her arms for a month, was on pain
    medication for two months, had limited mobility at work for
    four months, and was unable to drive for six weeks. The
    defendant appealed, claiming that the victim's injuries were
    not crippling, as required by the felonious driving statute, MCL
    752.191; MSA 28.661, and that the trial court erred in not
    allowing the defendant to cross-examine the victim regarding
    whether the victim had filed or contemplated filing a civil suit
    against the defendant.

        The Court of Appeals *held:*

        1. A person who drives a vehicle upon a highway carelessly
    and heedlessly in wilful and wanton disregard of the rights and
    safety of others, or without due caution and circumspection and
    at a speed or in a manner so as to endanger or be likely to
    endanger any person and property and thereby injuring so as
    to cripple any person, but not causing death, is guilty of
    felonious driving. For purposes of the felonious driving statute,
    a person is crippled where deprived of the use of limbs, particu-
    larly of leg or foot, or deprived of strength, activity, or capabil-
    ity for service or use. The injuries sustained by the victim in
    this case satisfy the definition of crippling injuries.

        2. The trial court erred in preventing the defense from cross-
    examining the victim about a lawsuit against the defendant.

REFERENCES
Am Jur 2d, Automobiles and Highway Traffic §§ 315, 322; Wit-
    nesses § 887.
See ALR Index under Bias or Prejudice; Cross-Examination; Pend-
    ing Actions and Proceedings; Reckless Driving.

The bias or interest of a witness is always a relevant subject of inquiry on cross-examination. In particular, whether a witness has filed or is contemplating filing a civil lawsuit, the prospects of which may be affected by the outcome of a criminal action, is always relevant to the credibility of the witness. The trial court's error requires reversal because it cannot be said that the jury would have reached the same verdict had the victim been cross-examined in the manner sought by the defense.

Reversed and remanded.

1. CRIMINAL LAW — FELONIOUS DRIVING — CRIPPLING INJURIES.

Injuries are crippling for purposes of the felonious driving statute where they deprive the injured person of the use of limbs, particularly of leg or foot, or deprive the injured person of strength, activity, or capability for service or use (MCL 752.191; MSA 28.661).

2. WITNESSES — BIAS OR PREJUDICE — LAWSUITS.

The bias or interest of a crime victim who testifies in the trial of the person accused of committing the crime, including whether the victim has filed or will file a civil suit against the accused, is a relevant subject of inquiry on cross-examination.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Anica Letica,* Assistant Prosecuting Attorney, for the people.

*Daniel J. Blank,* for the defendant.

Before: FITZGERALD, P.J., and MARKMAN and M. F. SAPALA,* JJ.

PER CURIAM. Following an accident involving another motorist, defendant was convicted by a jury of driving while impaired, MCL 257.625(3); MSA 9.2325(3), and felonious driving, MCL 752.191; MSA 28.661. Defendant claims that the evidence failed to establish the elements of the latter offense beyond a reasonable doubt.

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

MCL 752.191; MSA 28.661 provides:

> Every person who drives any vehicle upon a highway carelessly and heedlessly in wilful and wanton disregard of the rights and safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property and thereby injuring so as to cripple any person, but not causing death, shall be guilty of the offense of felonious driving . . . .

Defendant contends that the injuries suffered by the driver of the other vehicle could not be characterized as "crippling" injuries pursuant to this statute. He does not challenge the sufficiency of the evidence with regard to any of the other elements of the felonious driving offense.

In *People v Lockwood,* 308 Mich 618, 621; 14 NW2d 517 (1944), the Supreme Court defined the term "to cripple" as follows:

> "(1) to deprive of the use of a limb, particularly of a leg or foot; to lame.
> "(2) to deprive of strength, activity or capability for service." [quoting Webster's New International Dictionary (2d Ed)]
> "[The] word 'crippling' is the equivalent of words, 'physical disability' and is defined as to deprive of use of limbs, particularly of leg or foot, to deprive of strength, activity or capability for service or use, and to disable. 10 Words & Phrases (Perm Ed), p 544."

In *Lockwood,* the victim had fractured his collar bone and did not recover his ability to work until four months after the accident. The Court concluded that the injury was encompassed by the definition of "crippling," notwithstanding the victim's eventual full recovery. See, also, CJI2d

15.10(5); OAG, 1939-1940, p 322 (November 17, 1939) ("crippling injury" need not be a permanent injury).

In the immediate case, the victim suffered a broken collar bone, severe bruises and cuts on her body, and whiplash. She wore a neck brace for two weeks and a figure-eight shoulder brace for a month, and was unable to use or move one of her arms for a month. She was on pain medication for two months and had limited mobility at work for approximately four months after the accident. The victim was unable to drive for six weeks.

In reviewing the sufficiency of evidence, this Court must view it in the light most favorable to the prosecution. *People v Jolly,* 442 Mich 458, 466; 502 NW2d 177 (1993). Viewed in such light, the prosecutor "must offer enough evidence for a court to conclude that a rational trier of fact could find that the essential elements of the crime have been established." *Id.* Although the injuries suffered by the victim in this case were neither permanently disabling nor the most severely incapacitating injuries that one might imagine, we believe that a rational factfinder could have concluded that her injuries were "crippling" within the *Lockwood* definition.

Defendant also contends that the court erred in denying him the opportunity to ask the victim about any civil lawsuits that she might be contemplating. We agree. While the proper scope of cross-examination lies within the sound discretion of the trial court, *People v Hackett,* 421 Mich 338, 347; 365 NW2d 120 (1984), the bias or interest of a witness is always a relevant subject of inquiry upon cross-examination. In particular, whether a witness has filed or is contemplating filing a civil lawsuit, the prospects for which may be affected by the outcome of a criminal action, is always rele-

vant to a witness' credibility. *People v Grisham,* 125 Mich App 280, 285; 335 NW2d 680 (1983); *People v Johnston,* 76 Mich App 332, 336; 256 NW2d 782 (1977). The failure to allow such cross-examination may constitue error requiring reversal. *Crippen v People,* 8 Mich 116, 127 (1860); *People v Field,* 290 Mich 173; 287 NW 422 (1939); *People v Adamski,* 198 Mich App 133, 141-142; 497 NW2d 546 (1993); *People v Richmond,* 35 Mich App 115, 120; 192 NW2d 372 (1971); *Grisham, supra; Johnston, supra.* The prosecutor has failed to set forth any reason why the jury should have been denied access to information concerning a possible civil lawsuit by the victim-witness in this case.

We do not agree with the prosecutor that defense counsel's statement to "strike the question" (concerning the civil lawsuit) coming *after* the court stated that the question was "irrelevant" constituted a withdrawal of the question. While counsel may have been better disposed to employ different language in acquiescing to the court's evidentiary determination, we think that it is clear that there was no intention on his part to withdraw the inquiry. Therefore, we believe that defendant properly preserved this issue for appeal. We also do not agree with the prosecutor that defense counsel was under any obligation to make an offer of proof to the court concerning the purpose of the inquiry where such purpose "was apparent from the context within which" the question was asked. MRE 103(a)(2).

Further, we are unable to conclude that the trial court's error in limiting cross-examination in this case was harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt when it has had no effect on the verdict. *People v Bigge,* 297 Mich 58, 72; 297 NW 70 (1941); *People v*

*Thinel (On Remand),* 164 Mich App 717, 721; 417 NW2d 585 (1987). Claims that a denial of cross-examination has prevented the exploration of a witness' bias is subject to harmless error analysis. *People v Bushard,* 444 Mich 384, 391, n 7; 508 NW2d 745 (1993), citing *Chapman v California,* 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967); *Delaware v Van Arsdell,* 475 US 673, 684; 106 S Ct 1431; 89 L Ed 2d 674 (1986). See, also, *Crane v Kentucky,* 476 US 683, 691; 106 S Ct 2142; 90 L Ed 2d 636 (1986). In particular:

> "The rejection of such testimony [concerning the pendency of a civil lawsuit] does not necessarily result in a reversal in every instance. The case may have been made by other testimony of such force that the rejection of the testimony would be held immaterial error." [*Richmond, supra,* p 120, quoting *State v Decker,* 161 Mo App 396; 143 SW 544 (1912).]

See, also, *Johnston, supra.*

However, in the instant case, the victim-witness was a virtually indispensable witness in communicating the circumstances of her disability. Although the treating emergency physician, Dr. Wilkerson, was able to testify competently about the substantive character of the injuries suffered by the victim, he was unable to testify about the extent to which such injuries disabled their victims. The following exchange between the prosecutor and Dr. Wilkerson occurs at one point:

> *Q.* All right, Doctor, based on your experience, have you seen what the effects of such an injury as you found in this case have included?
>
> *A.* I've not seen much of this. We don't do such follow up or see chronic care things. I primarily deal with acute process. So I don't know if I could really comment on what to expect overall.

Nor was Dr. Wilkerson as the emergency physician able to testify about the specific effect of these injuries upon the particular victim in this case. His "knowledge, skill, experience, training or education," MRE 702, apparently was not broad enough to address the all-important issue in this case about the extent to which the injuries suffered by defendant were incapacitating or debilitating. The definition of "cripple" is one which focuses upon the effect of an injury upon a particular person. Obviously what will "deprive of the use of a limb" or "deprive of strength, activity or capability for service" one individual will not necessarily have the same effect upon another. Given the relatively minimal "crippling" injuries suffered by the victim in this case (although undoubtedly quite painful ones), we cannot say beyond a reasonable doubt that the jury would have come to the same conclusion that the victim had suffered "crippling" injuries in the absence of the victim's testimony setting forth the extent and duration of her own pain and suffering.

Reversed and remanded for a new trial. We do not retain jurisdiction.