*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

AMANDA JENISE HARDY,

      Defendant-Appellant.

UNPUBLISHED
November 26, 2019

No. 339236
Wayne Circuit Court
LC No. 17-002020-01-FH

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of assaulting, resisting, and obstructing a police officer, MCL 750.81(d)(1). We vacate defendant's conviction and remand for a new trial.

## I. BACKGROUND FACTS

On the evening of June 14, 2016, defendant was driven by a friend to a Beyoncé concert at Ford Field. At the concert, defendant sat separate from her friend. At some point during the concert, defendant was apprehended by two bouncers for acting disorderly.[1] The bouncers brought defendant over to Officer Donyale Crutchfield and her partner, Detective Laura Layher, and instructed the officers to remove defendant from the venue. The officers handcuffed defendant and escorted her to the front door of the building. Once there, the officers removed defendant's handcuffs and instructed her to exit the building.

Accounts differ about what happened next. According to the officers, defendant refused to leave, eventually becoming combative with the officers and striking Officer Crutchfield's face, at which time the officers took defendant to the ground and arrested her while defendant shouted profanities. Defendant, on the other hand, contended that she was compliant with the

---

[1] Defendant denied that she was acting disorderly.

-1-

officers at all times, that she told the officers that she was trying to reach her friend who was still in the concert, and that, when defendant turned to face Officer Crutchfield, the officer grabbed defendant by the neck and threw her to the ground, causing defendant to hit her head.

During the prosecutor's cross-examination of defendant on the second day of trial, the prosecutor asked defendant if she intended to sue the Detroit Police Department. After an objection from defense counsel, the trial court ended trial for the day and allowed the parties to argue the issue the following morning, outside the presence of the jury.

The following morning, the trial court ruled that the question was relevant and that cross-examination on the issue would be permitted. When in front of the jury, the prosecutor continued her questioning of defendant:

> [*Prosecutor*]: [Defendant] when we left off I was asking about you [sic] the potential civil suit suing the Detroit Police Department that you may bring.
>
> Do you recall that question?
>
> [*Defendant*]: Yes.
>
> [*Prosecutor*]: All right.
>
> And isn't it true that you are at the very least contemplating a civil suit suing the Detroit Police Officer Crutchfield for what happened on June 14th, 2016?
>
> [*Defendant*]: It honestly never crossed my mind to actually do that. My main concern was her and is you know dealing with this.
>
> [*Prosecutor*]: All right.
>
> So would it surprise you to learn that your attorney told me you are filing a civil suit against the Detroit Police Department.
>
> [Defense counsel's objection omitted.]
>
> [*Defendant*]: Could you ask the question again?
>
> [*Prosecutor*]: Would it surprise you to learn that your defense attorney . . . told me you were contemplating filing a civil lawsuit against the Detroit Police Department?
>
> [*Defendant*]: Yes.
>
> [*Prosecutor*]: All right.
>
> And you're aware that um that that potential civil lawsuit would be greatly affected by the outcome of this case, correct?

[*Defendant*]: Could you say that one more time?

[*Prosecutor*]: That that civil suit suing the Detroit Police Department would [be] greatly impacted . . . or affect[ed] . . . by the outcome of this case?

[*Defendant*]: I guess so.

[*Prosecutor*]: All right.

That makes sense to you right?

[*Defendant*]: Yes.

## II. PROSECUTORIAL MISCONDUCT

On appeal, defendant argues that the prosecution's repeated questioning of defendant about a possible civil suit rose to the level of prosecutorial misconduct.[2] Defendant also argues that the prosecutor committed misconduct by asking a question that implied she had personal knowledge about facts not in evidence. We agree that the prosecutor committed misconduct by asking a question that implied that she had personal knowledge about defendant's credibility, and therefore vacate defendant's conviction.

A defendant preserves a claim of prosecutorial misconduct by objecting to the misconduct and allowing the trial court an opportunity to cure the error. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). Defendant objected to the prosecutor asking "several questions" about a potential civil lawsuit, and also objected after the prosecution asked, "So would it surprise you to learn that your attorney told me you are filing a civil suit against the Detroit Police Department," arguing that the question was "improper." These issues are therefore preserved.

"We generally review de novo allegations of prosecutorial misconduct." *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001).

The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Issues of prosecutorial misconduct are decided case by case, and this Court must evaluate a prosecutor's alleged misconduct in context. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016).

---

[2] This Court recently explained in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," while only the most extreme cases rise to the level of "prosecutorial misconduct." However, we will use the phrase "prosecutorial misconduct" because it has become a term of art.

Briefly addressing defendant's argument that it was improper for the prosecutor to repeatedly ask about a potential civil lawsuit, we conclude that the argument has no merit. The prosecutor's questions regarding the civil lawsuit were relevant because they were probative of defendant's credibility. *People v Morton*, 213 Mich App 331, 334; 539 NW2d 771 (1995) ("[W]hether a witness has filed or is contemplating filing a civil lawsuit, the prospects for which may be affected by the outcome of a criminal action, is always relevant to a witness' credibility."). "Any party may attack the credibility of a witness." *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002). The prosecutor only twice asked defendant whether she was contemplating suing the Detroit Police Department based on what happened in this case, and defendant only answered the question once. Because the question properly weighed on defendant's credibility, and because the prosecutor twice asking the question was entirely reasonable, we conclude that the prosecutor's repeated questioning of defendant about the potential civil lawsuit did not deprive defendant of a fair and impartial trial.

We are troubled, however, by the prosecutor's follow-up question, when she asked, "Would it surprise you to learn that your defense attorney . . . told me you were contemplating filing a civil lawsuit against the Detroit Police Department?" It is well established that a prosecutor may not "convey a message to the jury that the prosecutor [has] some special knowledge or facts indicating the witness' truthfulness." *People v Bahoda*, 448 Mich 261, 277; 531 NW2d 659 (1995). This is because a prosecutor's "suggestions [and] insinuations . . . of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935). It is no surprise, then, that a prosecutor "may not make representations to the jury based on his personal knowledge unless he testifies as a witness." *People v Pearson*, 123 Mich App 462, 466; 332 NW2d 574 (1983). See also *People v Lusk*, 225 Mich 642, 644-645; 196 NW 403 (1923) (explaining that "[p]rosecuting attorneys should not make unsworn statements of facts within their knowledge in the presence of the jury"); *People v Dane*, 59 Mich 550, 552-553; 26 NW 781 (1886) ("If the prosecutor was cognizant of the fact that the defendant was the man who took the money, and wished the jury to be possessed of his knowledge, he should have been sworn as a witness, and given his evidence in the usual way, so that the defendant could have the benefit of a cross-examination.").

While the prosecution's attempt at impeaching the witness was proper, the way she phrased the question was not.[3] The question was phrased so as to insinuate that the prosecutor had personal knowledge that defendant was contemplating filing a civil lawsuit against the Detroit Police Department. The prosecutor phrased the "question" as a statement about a fact

---

[3] This is in part because of the special role of prosecutors. As the Supreme Court of the United States memorably explained,

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. [*Berger*, 295 US at 88.]

(defense counsel had told the prosecutor that defendant was intending to file a civil lawsuit against the Detroit Police Department), and asked defendant whether learning of this fact surprised her.

When considered in the broader context of the prosecutor's line of questioning, this conveyed to the jury that the prosecutor had personal knowledge about defendant's credibility. The question immediately followed defendant's testimony that she was *not* contemplating filing a lawsuit against the Detroit Police Department. The question, phrased as it was, suggested to the jury that the prosecutor knew that defendant had told defense counsel otherwise. Put simply, the question was asked in such a way so as to convey to the jury that the prosecutor had personal knowledge that defendant was not telling the truth about a potential impending civil suit against the Detroit Police Department. Accord *People v Gotshall*, 123 Mich 474, 483-484; 82 NW 274 (1900) ("The purpose of these questions is too manifest. It was designed to convey to the jury the impression that the prosecuting officer believed [the defendant] was guilty of [a series of arsons that he was not on trial for].").[4] There can be no question that this was indeed the purpose of the question given that the prosecutor, in response to defense counsel's objection to the question, flatly stated, "But defense counsel informed me that she is going to file a civil suit pending the adjudication of this litigation."

This conduct was clearly inappropriate. See *Bahoda*, 448 Mich at 277. But to warrant a new trial, the conduct must have denied defendant a fair and impartial trial. *Dobek*, 274 Mich App at 63. Based on the facts of this case, we conclude that it did.[5]

This case relied almost exclusively on the credibility of the witnesses: defendant's testimony versus the arresting officers' testimony. Defendant's defense was that she did not assault, resist, or obstruct the officers in any way. The only evidence she had to support this was her testimony, and the only evidence that directly rebutted defendant's testimony was the officers' testimony. Had the jury believed defendant's testimony and discredited the officers, defendant could not have been guilty.

It is thus unsurprising that the prosecutor stated during closing arguments that "credibility is at the crux of this case," and then spent almost half of her closing arguing why the officers were credible and defendant was not. In doing so, the prosecutor repeatedly suggested that defendant was not credible because she was planning to file a civil lawsuit against the Detroit Police Department. The prosecutor stated, "[Officer Crutchfield] does not know [defendant],

---

[4] On appeal, the prosecution argues that the prosecutor was simply trying to impeach the witness, nothing else. But if the sole purpose of the prosecutor's question was to present a prior inconsistent statement, the prosecutor could have asked the question in a way that did not imply that she had personal knowledge that defendant was contemplating filing a civil lawsuit against the Detroit Police Department.

[5] As previously noted, defense counsel objected to the prosecutor's question, arguing, among other things, that it was "improper." Despite this proper objection to the improper question, the trial court overruled the objection and failed to immediately give a curative instruction.

she's not out to get her, she has no personal ax to grind. The defendant however has a huge personal interest in how this case is decided." The prosecutor later stated that defendant recorded her injuries, and submitted photos of her injuries as evidence, because the "alleged injuries of the defendant would be useful during a civil suit." The prosecutor followed up by stating,

> That's useful in a subsequence [sic] civil suit. Think about why you are here. Think about what you're being told. And ladies and gentlemen, this comes down to credibility.

> And I submit to you that [defendant] is not credible. And she does not want to be in trouble and has other interest as well.

> That interest is not in telling you the truth.

Clearly, the prosecutor knew that this case came down to credibility, and the prosecutor hammered on the idea that defendant was not credible because she "has a huge personal interest in how this case is decided." In other words, the prosecutor argued that defendant had a reason to lie about being compliant with the arresting officers because she was planning to bring a civil suit if acquitted. Standing alone, this argument was not improper, even in light of defendant's denial. But when the jury considered this argument, it also had before it the prosecutor's question implying—as well as the prosecutor's statement flatly saying—that the prosecutor had personal knowledge that defendant was indeed planning to file a civil lawsuit, despite defendant's testimony that she was not. Thus, the prosecutor conveyed to the jury that she had personal knowledge that defendant was lying when she said she was not contemplating filing a civil lawsuit against the Detroit Police Department, and then argued to jurors that they should discredit defendant for that reason. On these facts, we cannot conclude that defendant received a fair trial.

In sum, the prosecutor's question was clearly improper because it conveyed to the jury that the prosecutor had personal knowledge that defendant was being untruthful when she testified that she was not planning to file a civil lawsuit against the Detroit Police Department. This error was compounded when the prosecutor unambiguously stated that "defense counsel informed me that she is going to file a civil suit pending the adjudication of this litigation." Despite defense counsel's timely objection, the trial court overruled the objection and failed to immediately give a curative instruction. As a result, the prosecutor's improper question and statement were allowed to stand before the jury, uncorrected. The prosecutor then argued at length that defendant was not credible because she was contemplating bringing a civil lawsuit against the Detroit Police Department—the same fact that the prosecutor had insinuated, and then unequivocally stated, that she had personal knowledge to be true, despite defendant's testimony that it was not. On this record, the prosecutor's conduct deprived defendant of a fair trial. We therefore vacate defendant's conviction and remand for a new trial.

       Defendant's conviction is vacated, and the case is remanded for a new trial. We do not retain jurisdiction.


                              /s/ Colleen A. O'Brien
                              /s/ Jane M. Beckering