*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTONIO DEQUAWN SHAMONTAE-HALL,

Defendant-Appellant.

UNPUBLISHED
January 21, 2020

No. 345861
Berrien Circuit Court
LC No. 2017-003496-FC

Before: O'BRIEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for first-degree felony murder, MCL 750.316(1)(b); armed robbery, and conspiracy to commit armed robbery, MCL 750.529.[1] We affirm.

This case arises out of the shooting death of the victim at the River Terrace apartment complex in Benton Harbor, Michigan. The victim was sitting in his car with Uniqua Jones in the complex's parking lot. Jones testified at trial that defendant and another man approached the car and asked the victim if he wanted to purchase a bottle of liquor. The victim agreed. He pulled out a two-inch stack of money from his back pocket to pay. Defendant and the other man saw the money and walked away. Later, a man that Jones identified as "Chub" approached on a bicycle and started shooting at the car. Jones ran from the car to a nearby building to notify security. Denzeil Dade, who testified at trial,[2] explained that defendant and another man approached him about a robbery. Defendant stated that he sold the victim liquor. Dade agreed to participate in the robbery, but instead of attempting to rob the victim, he simply walked by the victim's car. He then heard gunshots and hid in a nearby bush. Shortly thereafter, he met with

---

[1] The jury acquitted defendant of two counts of possession of a firearm during the commission of a felony: one related to the armed-robbery charge, the other related to the felony-murder charge.

[2] Dade was incarcerated at the time of trial. He pleaded guilty as an accessory after the fact in exchange for providing truthful testimony at defendant's trial.

defendant, "Chub," and another man after he saw them walking in the park area near the office. Law enforcement discovered the victim lying face down in front of his car in the parking lot. He had been shot twice in the abdomen, and he died at the hospital.

On appeal, defendant first argues that the trial court's refusal to allow defense counsel to ask Jones whether the victim was at River Terrace to participate in a drug deal denied defendant his right to present a defense and his right to confrontation. We disagree.

During the cross-examination of Jones, defense counsel asked whether the victim was present for a drug deal. The prosecutor objected before Jones could respond. The trial court excused the jury. Defense counsel argued that the question was permissible because, if Jones answered in the affirmative, it would show that her earlier testimony that the victim went to River Terrace to change his clothes was a lie. Defendant's impeachment-related argument is therefore preserved for appeal. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). But because defendant never argued that Jones's answer to the question would have established witness bias, or that the trial court's refusal to allow defendant to pursue this line of questioning would deny defendant his right to present a defense or his right of confrontation, those issues are unpreserved.

The proper scope of cross-examination lies within the discretion of the trial court. *People v Morton*, 213 Mich App 331, 334; 539 NW2d 771 (1995). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted). This Court reviews de novo whether defendant was deprived of his constitutional right to present a defense or his right to confrontation. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009); *People v McPherson*, 263 Mich App 124, 131; 687 NW2d 370 (2004). However, because defendant did not object on the basis of constitutional grounds in the trial court, his confrontation and right-to-present-a-defense arguments are reviewed for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

In all criminal prosecutions, the accused has the right to be confronted with the witnesses against him or her. US Const, Am VI. See also *People v Spangler*, 285 Mich App 136, 142; 774 NW2d 702 (2009). The right to confrontation includes the right to cross-examination. See *Davis v Alaska*, 415 US 308, 315-316; 94 S Ct 1105, 39 L Ed 2d 247 (1974). "Cross-examination is the principal means by which the believability of a witness and the trust of his testimony are tested." *Id.* at 316. Proper cross-examination includes impeachment of the witness and disclosure of possible biases. See *id.* However, trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v Van Arsdall*, 475 US 673, 679; 106 S Ct 1431; 89 L Ed 2d 674 (1986). Overall, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quotation marks and citation omitted).

We initially note that defense counsel's question to Jones, even if she answered affirmatively, would not necessarily have impeached Jones' testimony with an inconsistent

statement. Jones testified that the victim told her that he had to stop at River Terrace to change his clothes, but Jones did not testify that this was the only reason that the victim was at River Terrace. Thus, even if the victim was at the apartment complex to participate in a drug deal, it does not make Jones' testimony that the victim told her that he had to stop at River Terrace to change his clothes untrue.

Regardless, defense counsel explained that the purpose of the question was to impeach Jones with a prior inconsistent statement. The trial court asked defense counsel whether he believed it proper to ask Jones a question that he had "no information about in order to secure an inconsistent statement," and defense counsel answered, "No." The trial court ultimately did not allow defense counsel to pursue that line of questioning because it had concerns that defense counsel was "fishing," and it did not want to have a "mini trial" to secure an inconsistent statement. Considering defense counsel's explanation for the question and the trial court's concerns, we do not believe that the trial court abused its discretion by not allowing the question on the basis that it was for the purpose of impeachment. See *Van Arsdall*, 475 US at 679.

Defendant also argues that this question would establish Jones' bias. A witness's bias is always relevant, and a defendant is entitled to have the jury consider any fact that may have influenced the witness's testimony. *People v McGee*, 268 Mich App 600, 637; 709 NW2d 595 (2005).

Defendant claims that if Jones agreed that the victim was waiting in his car to consummate a drug deal, it would support a finding that Jones' testimony was biased because her prior testimony sought to protect her stepfather. But it is unclear how Jones's testimony protected her stepfather, who was never identified by name or otherwise involved in the case. Moreover, defendant does not explain how Jones protecting her stepfather made her biased against defendant or otherwise influenced her testimony. See *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008) (stating that the defendant "may not leave it to this Court to search for a factual basis to sustain or reject his position") (quotation marks and citation omitted). In short, defendant has failed to establish that the answer to defense counsel's question involving a possible drug deal, even if answered in the affirmative, would show the existence of bias.

Similarly, the trial court's refusal to allow Jones to answer the question did not deny defendant his right to pursue a defense. The theory of the prosecution was that the motivation for the robbery was the victim's "stack" of cash that defendant observed during the liquor sale. Defendant, in response, argued that he was not present or involved in the robbery or murder. The actual reason for the victim's presence would not affect either of these theories, and the jury was entitled to believe defendant's version of events. Moreover, Jones' testimony concerning defendant's involvement in the incident was corroborated by the testimony of three other witnesses, including Dade. Defendant has not shown that the trial court's refusal to allow Jones to answer a question about an alleged drug deal denied him his constitutional right to present a defense, and, therefore, defendant has failed to show plain error affecting his substantial rights. See *Carines*, 460 Mich at 764.

Defendant also raises two issues in a Standard 4 brief filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4. He first argues that the trial court failed to apply the necessary three-step process after defendant raised a *Batson*[3] challenge. We disagree.

"Under the Equal Protection Clause of the Fourteenth Amendment, a party may not exercise a peremptory challenge to remove a prospective juror solely on the basis of the person's race." *People v Knight*, 473 Mich 324, 335; 701 NW2d 715 (2005). The constitutionality of a peremptory challenge requires a three-step analysis: (1) "the opponent of the peremptory challenge must make a prima facie showing of discrimination;" (2) "if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike;" and (3) "if the proponent provides a race-neutral explanation as a matter of law, the trial court must then determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has provided purposeful discrimination." *Id*. at 336-338.

Defendant objected to the prosecution's dismissal of an African-American juror. The parties approached for a bench conference, and the following ensued:

> *The Court*. You [referring to defense counsel] want to make a <u>Brady</u> [sic] motion?[4] You [now referring to the prosecutor] kicked two off. What are you doing?
>
> * * *
>
> You'd [still referring to the prosecutor] better be able to articulate something very significant.
>
> * * *
>
> *Ms. Wilkinson* [the prosecutor]: Judge, whether or not what [the excused juror] says, your Honor, the fact of the matter is her son has been convicted on an armed robbery, did a serious stint in prison for that. I think the (indiscernible) of the same type of accomplice co-defendant situation that we're dealing with in this case, your Honor. I understand from what she articulated on the record, your Honor, but I think there is a sufficient non-race reason to challenge her on a peremptory challenge.
>
> *The Court*. Okay. Do you [referring to defense counsel] want . . . to be heard on the record outside the presence of the jurors or the potential jurors?

---

[3] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

[4] Although defendant argues that defense counsel erred by "objecting on the grounds of a *Brady* challenge" (presumably referring to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963)), it was actually the trial court that made this mistake. At any rate, it was clear to both parties and the trial court that defendant was raising a *Batson* challenge.

*Mr. Engram* [defense counsel].  We're on the record now; right?

*The Court*:  Yes.

\* \* \*

*Defense counsel*:  —(indiscernible) at this point, I don't—I mean, I just—I don't think—I mean, we've got a mostly white jury at this point.  See where I'm going with this?  There's one black person.

*The Court*:  Well, we have—okay.  So are you making an objection under <u>Brady</u> [sic], is my question.

*Defense counsel*:  Yeah.

*The Court*: Okay.

*Defense counsel*:  That's what I—

*The Court*:  Well, that's fine, because you've got to preserve the record.

*Defense counsel*:  Okay.

*The Court*:  So, I—is there anything further that you want to put on the record?

*Defense counsel*:  I—I have, no—you know, other than that I have nothing else.  Right now I can't put my finger on anything to say (indiscernible).[5]

\* \* \*

*The Court*:  Okay.  All right.  Well, I don't want to have her sit around here all—all day.  We'll let the Court of Appeals decide whether you've gone too far, [prosecutor].  I think articulating a basis other than race by the fact that this—in spite of her answers under oath on the record that her son was involved in an armed robbery that was—also involved multiple defendants, I suppose, articulates a—what might be considered, without doing further research, articular base—articular—articulable basis beyond race.  I will say that given her answers on under [sic] oath on the record that I have a concern, but I—but we'll let the Court of Appeals decide that one.  All right.

---

5 Defendant asserts in his Standard 4 brief that "[t]he trial court did not allow the defense to articulate or give any arguments to their claim which it is required to do[.]"  This claim is factually incorrect and does not warrant further discussion.

Defendant does not challenge the trial court's ruling on any of *Batson*'s three steps, but instead argues that the trial court improperly applied *Batson*'s three steps as a whole. We disagree. Parts of the trial court's ruling are unclear, so we "must determine on the basis of a fair reading of the record what the trial court has found and ruled." *Knight*, 473 Mich at 339.

It appears that the trial court, without so stating, found that defendant satisfied *Batson*'s first step and made a prima facie showing of racial discrimination. At any rate, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v New York*, 500 US 352, 359; 111 S Ct 1859; 114 L Ed 2d 395 (1991). Thus, we turn to whether the other two steps of a *Batson* challenge were satisfied.

The prosecution offered a race-neutral explanation for dismissing the objected-to juror; the prosecution stated that it dismissed the juror because her son had been convicted of an armed robbery involving multiple defendants, which was a similar scenario to defendant's case. This Court, in similar circumstances, has found such an explanation to be a sufficient race-neutral reason for dismissal. See *People v Howard*, 226 Mich App 528, 535; 575 NW2d 16 (1997) (concluding that the prosecutor's dismissal of a potential juror in a murder case on the basis that he had an uncle with whom he was close who had been tried for murder was a race-neutral reason). Thus, the prosecution satisfied the second *Batson* step.

The trial court, although somewhat hesitant, accepted the prosecution's race-neutral explanation and concluded that it was not a pretext for racial discrimination. Contrary to defendant's characterization of the trial court's ruling, we do not read its decision as leaving "[it] up to the court of appeal [sic] basically because he didn't want a juror sitting there." Rather, under a fair reading of the trial court's ruling, we believe that the trial court made a ruling, but acknowledged that, without doing additional research, its ruling could be wrong and so invited appellate review. Thus, the trial court satisfied the final step of a *Batson* challenge, and, taken as a whole, we conclude that the trial court properly applied the *Batson* framework. As defendant does not challenge the trial court's ultimate ruling on the *Batson* challenge, and limits his argument only to whether the proper procedure was followed, his argument does not warrant appellate relief.[6]

---

[6] If we were to review the trial court's ruling itself, we would conclude that defendant has not shown that the prosecution's challenge to the objected-to juror was based on race. The prosecution exercised 11 preemptory challenges. From the record, it appears that two of those jurors were African American. Defendant did not object to the first dismissal. As already stated, the prosecutor's explanation with respect to the second juror was a race-neutral reason for dismissal. See *Howard*, 226 Mich App at 535. Further, at the time of the *Batson* challenge, defense counsel stated that there was one African American juror, but the record does not indicate the racial makeup of the individuals in the galley or the final jury. Considering the record and the prosecution's explanation, defendant has not shown that the preemptory challenge to the juror was the result of racial discrimination. See *Knight*, 473 Mich at 344-345. We would

Lastly, defendant argues that defense counsel at trial was ineffective for failing to request a hearing to determine whether defendant's *Batson* claim had merit and for failing to object after a juror allegedly fell asleep. We disagree.

Because defendant moved for a remand in this Court, his ineffective-assistance claim is preserved. But because that motion was denied, our review is limited to errors apparent on the record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). Effective assistance is "strongly presumed," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and the defendant bears the heavy burden of proving otherwise, *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004).

Defendant argues that defense counsel was ineffective for failing to request a hearing for the trial court to address the *Batson* challenge. However, as already discussed, defense counsel objected to the dismissal of the juror; the parties approached the trial court and discussed the challenge at a bench conference; and the trial court listened to the parties' arguments, ensured that those arguments were included in the record, and ultimately overruled defendant's challenge. This is all that is required to address a *Batson* challenge. Any motion made by defense counsel for a hearing on this issue would have been meritless. "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).

Defendant also claims that defense counsel was ineffective for not objecting when a juror fell asleep during the trial. This claim, however, is not supported by the record. It appears that defendant's assertion that a juror fell asleep occurred during defense counsel's cross-examination of Vanessa Lloyd. Lloyd's boyfriend at the time, Jerail Lamont Porter, testified that he was staying with Lloyd near where the shooting took place, and that, after hearing gunshots, he went to a window and saw three men beating another man in the parking lot. Porter identified defendant as one of the three men doing the beating. While cross-examining Lloyd, defense counsel asked Lloyd what she told officers, as recounted in a police report, about Porter's actions when she left the room. The following exchange occurred:

> *Q.* Okay. This is my question: When the officer interviewed you, did you tell him that you remained in the room that you ran out of and cannot say what Porter was doing after you left?

---

therefore conclude that the trial court did not clearly err in determining that the prosecution provided a race-neutral reason for using a preemptory challenge. See *id.* at 337-338 (explaining that appellate courts review for clear error a trial court's decision that the prosecution offered a race-neutral reason for dismissing a juror).

*Ms. Wilkinson* [the prosecutor]: I'm sorry, Judge. Did she—he say that she remained in the room or who remained in the room?

*Mr. Engram* [defense counsel]: She. She remained in the room that she ran—remained in the room that she ran—actually I think it should be ran to, and can't—

*The prosecutor*: This whole thing is confusing, Judge.

*The Court*: Yeah. What—where—step up.

(At 3:58 p.m., bench conference)

*The Court*: So, you've got a lousy police report, it sounds like. Not—it wasn't very precise language he used. Why don't you just ask what do you think—I mean is the confusion that—that the witness (indiscernible)?

*Defense counsel*: Yeah.

*The Court*: But—but you have a jury here that's, you know, falling asleep.

*Defense Counsel*: Yeah.

*Trial Court*: You do what you want to do.

*Defense Counsel*: Right.

*Trial Court*: But it sounds to me like that is a confusing statement in that police report and I can't tell what that—frankly, I didn't think her answer the first time you read that to her sounded inconsistent with anything she said. She—she doesn't know what Porter was doing when she wasn't in the room with him, if that's where you're trying to go. Yeah. See if you can figure out a way of doing it without—

*Defense Counsel*: Yeah.

*Trial Court*: —confusing folks. Okay? All right.

Thus, the record does not support the inference that a juror actually fell asleep. Instead, the trial court was cautioning defense counsel that his line of questioning was tedious and confusing, and suggested that he attempt another tactic or rephrase his question to keep the jury's full attention. Because there was no sleeping juror, there was nothing for to which defense counsel could object. See *Riley*, 468 Mich at 142.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola