*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 24, 2025
10:30 AM

Plaintiff-Appellee,

v

No. 371216
Monroe Circuit Court
LC No. 2023-247561-FC

STEVEN DOUGLAS BAILS JR.,

Defendant-Appellant.

Before: REDFORD, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of first-degree murder, MCL 750.316; and conspiracy to commit murder, MCL 750.316. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to life in prison without the possibility for parole for the first-degree murder conviction and life in prison with the possibility of parole for the conspiracy to commit murder conviction. Finding no errors warranting reversal, we affirm.

## I. BACKGROUND

This case arose when defendant and his codefendants,[1] Sierra Bemis,[2] Brin Smith,[3] Narena Bails,[4] Alexander Feko, and Kaylyn Ramsey, plotted and killed the victim. Defendant, Bemis, Smith, Ramsey, Narena, and the victim lived together in an apartment. Defendant and the victim were in a relationship, but defendant ended it, claiming the victim lied about being pregnant and

---

[1] While defendant was charged with his codefendants, his trial was severed from theirs, and he is the only party to this appeal.

[2] Bemis is defendant's stepdaughter.

[3] Smith is defendant's cousin.

[4] Narena is defendant's wife.

-1-

fought with Ramsey. Defendant kicked the victim out of the apartment and began to develop a plan to kill her.

Defendant procured a gun from Feko and had Smith fabricate a romantic relationship with the victim. On the night of February 15, 2023, defendant, Bemis, Ramsey, and Smith went to Boysville, an abandoned juvenile facility. Defendant instructed Narena to remain at the apartment to monitor a police scanner. Smith messaged the victim to meet him under the Roessler Bridge in Monroe, Michigan. Defendant and Ramsey entered the abandoned facility, Bemis remained outside as a lookout, and Smith drove to meet with the victim. Smith returned to Boysville sometime later with the victim and took her into the building. The victim was shot three times. Her body was left in the gymnasium and covered with a shower curtain and closet door. Defendant, Bemis, Ramsey, and Smith returned to their apartment. Defendant called Feko to return the gun. Feko retrieved the weapon, cleaned it, and buried it in his neighbor's property. The next day, defendant, Smith, and Ramsey returned to Boysville. They rubbed lotion on the victim's body in an attempt to mask the smell.

On March 2, 2023, a group of young boys discovered the body of the victim while exploring the abandoned facilities at Boysville and notified the police. Detective Sergeant Michael Peterson of the Michigan State Police (MSP) led the investigation. Defendant's cousin, Delisa Rice, disclosed defendant's and codefendants' involvement in the victim's murder. Defendant left for Florida, but was later arrested in North Carolina. He was charged as noted.

Before trial, the prosecution moved to exclude various testimony from Feko. Relevantly, the prosecution argued that testimony regarding Feko's time as an informant for the MSP in an unrelated matter was not relevant to the charges against defendant. Defendant argued Feko's testimony was relevant as impeachment evidence and to show bias or prejudice. Defendant further asserted that exclusion of the testimony would violate his right under the Confrontation Clause of the Sixth Amendment. The trial court granted the prosecution's motion.

Defendant moved to exclude the prosecution from describing his friend group, "the reapers," as a gang. The trial court agreed that reference to or use of the term "gang" was not permitted, but did not exclude the prosecution from referencing defendant's friend group as "the reapers," noting it was the name used by the group.

On cross-examination at trial, Rice mentioned that defendant was previously incarcerated. The trial court instructed the jury to disregard her comment about defendant's previous incarcerations. Defendant moved for a mistrial, arguing the jury would not be able to forget Rice's comment, which was unfairly prejudicial. Defendant also claimed the trial court's curative instruction was insufficient to remedy the prejudice. The trial court denied defendant's motion, determining the comment was brief, not prejudicial, and the curative instruction was sufficient.

The prosecution presented an online post authored by defendant and read it into the record. The post indicated defendant was upset with the victim and called her a liar. Defendant referred to himself as the "Grim Reaper" and his friends as "the reapers," noting the victim was no longer a part of their group and she needed to "go and never come back." The jury found defendant guilty, and he was sentenced as indicated above. Defendant now appeals.

## II. STANDARDS OF REVIEW

"The denial of a motion for a mistrial is reviewed for an abuse of discretion." *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *People v Beesley*, 337 Mich App 50, 54; 972 NW2d 294 (2021) (cleaned up).

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. at 252. Questions of law, such as if a rule of evidence or statute precludes admission of the evidence, are reviewed de novo. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).

"Whether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). "De novo review means we review this issue independently, without any required deference to the courts below." *Id*.

## III. MISTRIAL

Defendant argues the trial court erred by denying his motion for a mistrial.[5] We disagree.

"A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *Beesley*, 337 Mich App at 54 (cleaned up). "Thus, for a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense." *Id*. (cleaned up). The moving party has the burden to establish the alleged error was so significant, prejudice cannot be removed in any other way. *Id*. at 54-55.

There is no dispute that Rice improperly mentioned defendant's previous incarcerations. But "not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial. Specifically, an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999) (cleaned up), overruled on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007). Rice's comment was made in response to trials counsel's question about how she knew defendant, and she disclosed the information voluntarily, which trial counsel acknowledged. Thus,

---

[5] For the first time on appeal, defendant appears to assert that trial counsel's performance was deficient because he failed to object to Rice's comment. Defendant did not raise an ineffective-assistance challenge in his statement of questions presented and thus this claim of error is abandoned. See *People v Haynes*, 338 Mich App 392, 435 n 5; 980 NW2d 66 (2021) ("To the extent that these statements might be interpreted as additional claims of error, defendant has abandoned them by failing to identify them in his statement of the questions presented."). Moreover, trial counsel objected to Rice's comment and clarified his objection when the jury was excused, "to not draw a lot more attention to the jury than it already did." Accordingly, even if the ineffective-assistance challenge on this issue was not abandoned, there was no error.

Rice's statement was insufficient on its own to warrant a mistrial. See *Griffin*, 235 Mich App at 36.

Additionally, the trial court immediately issued a curative instruction, stating: "The jury should disregard any comments about the prior incarcerations." Defendant argues the mention of his previous incarcerations impacted his credibility, making the jury more likely to believe he was dangerous, and the trial court's instruction was insufficient in remediating the prejudice. For support, defendant cites this Court's holding in *People v Hoskins*, 342 Mich App 194, 214 n 11; 993 NW2d 48 (2022), stating introduction of prior bad acts evidence was "too great for any instruction to mitigate its effect." But defendant fails to provide context for this Court's conclusion.

In *Hoskins*, the defendant filed an interlocutory appeal to challenge the trial court's denial of his motion to exclude instances of sexual abuse from 2002. *Id*. at 199-200. The trial court denied defendant's motion, which this Court affirmed in part and reversed in part. *Id*. at 215-216. This Court determined the trial court properly denied defendant's motion with respect to his convicted conduct, but erred when it denied his motion with respect to his acquitted conduct. *Id*. at 215-216. When discussing the difference, this Court noted: "Perhaps most importantly, the introduction of other-acts evidence also presents the danger that a jury will convict the defendant solely because it believes he committed other criminal conduct, a possibility that is particularly egregious when the defendant has been *acquitted* of these other acts." *Id*. at 214 (emphasis in original). In a footnote, this Court added: "While a limiting instruction is a tool in the trial court's arsenal to prevent the jury from misusing other-acts evidence, we believe that the risk of unfair prejudice from the admission of this acquitted conduct is too great for any instruction to mitigate its effect." *Id*. at 214 n 11 (cleaned up).

When taken in context, the *Hoskins* Court determined that mitigating instructions were insufficient to remedy the prejudice caused by presenting other-acts evidence of *acquitted* conduct. *Id*. In this case, the prosecution never sought to admit other-acts evidence of defendant's acquitted conduct. Moreover, "jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). The trial court issued a curative instruction for the jury to disregard the mention of defendant's incarceration, which was made in response to a question by trial counsel on cross examination. This instruction was sufficient to remedy any potential prejudice from Rice's comment. See *Beesley*, 337 Mich App at 59-60 ("In addition, the jury was instructed to ignore all evidence related to defendant's criminal history. The jury is presumed to have followed the trial court's instruction, and the instruction was sufficient to cure any prejudice caused . . . .").

The trial court did not err by denying defendant's motion for a mistrial.

IV. FACEBOOK POST

Defendant argues that the admission of his Facebook post identifying his group as "the reapers," and himself as "the Grim Reaper," was unfairly prejudicial. We disagree.

"A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011).

Under MRE 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

"All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "Evidence is unfairly prejudicial when 'there exists a danger that *marginally* probative evidence will be given undue or preemptive weight by the jury.' " *People v Kowalski*, 492 Mich 106, 137; 821 NW2d 14 (2012) (cleaned up). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403. "Exclusion is required under MRE 403 only when the danger of unfair prejudice substantially outweighs the probative value of the evidence." *People v Head*, 323 Mich App 526, 541; 917 NW2d 752 (2018). "This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (cleaned up).

Our Supreme Court provided a list of factors to consider when balancing the probative and prejudicial effects of evidence, stating:

> The weighing of evidence's probative value against its prejudicial effect requires a balancing of several factors, including the necessary time to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove the fact. [*People v Sharpe*, 502 Mich 313, 331-332; 918 NW2d 504 (2018).]

Defendant contends the terms "reaper" and "Grim Reaper" carry widely-known negative connotations, associating the group with death, and notes the Grim Reaper is death personified. He argues the prosecution relied on the group's name to secure a conviction and the Facebook post "did not establish any fact which was at issue." We disagree.

Defendant was charged with Bemis, Smith, Ramsey, Narena, and Feko as codefendants, with first-degree murder and conspiracy to commit murder. "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Bass*, 317 Mich App 241, 266; 893 NW2d 140 (2016) (cleaned up). "Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *Id*. at 301. Factors to consider in establishing premeditation include, but are not limited to: "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the

circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *Id*. (cleaned up).

"A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). "The individuals must specifically intend to combine to pursue the criminal objective, and the offense is complete upon the formation of the agreement." *Id*. "The intent, including knowledge of the intent, must be shared by the individuals." *Id*. "Direct proof of a conspiracy is not required; rather, 'proof may be derived from the circumstances, acts, and conduct of the parties.' " *Id*., quoting *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997).

In the Facebook post, defendant expressed he was upset with the victim for lying about her pregnancy and stated she was not a "reaper." Defendant addressed himself as the "Grim Reaper" and stated he "realized [the victim] has . . . to go and never come back." Defendant then addressed his codefendants, stating "all reapers need to stick together," before naming Smith, Ramsey, Bemis, and Narena as his crew. Additionally, defendant referred to "the reapers" as his family, explaining he holds his family above everything.

Contrary to defendant's claim, the Facebook post is probative for the elements of the case. It established premeditation, with defendant writing the victim needed to "never come back," and the intent of defendant by listing his grievances with the victim and continually using dehumanizing language to describe her, like calling her "nothing," "worthless being," "the grey hair and stress that [defendant] go[es] to the hospital over," and "dead to me." The Facebook post contained evidence of the relationship between defendant, his codefendants, and the victim, which are elements to consider when determining premeditation. See *Bass*, 317 Mich App at 266.

Additionally, the use of the word "reapers" describes defendant and codefendants' friend group. Defendant specifically named his codefendants in his post and noted "all reapers need to stick together." To establish a criminal conspiracy, the prosecution needs to establish "[t]he intent, including knowledge of the intent, must be shared by the individuals." *Jackson*, 292 Mich App at 588. Defendant's Facebook post establishes who is a member of the group and the relationship of the members, with defendant calling "the reapers" family. Defendant also identified himself as "the Grim Reaper," which supported the prosecution's claim defendant was the leader or instigator of the conspiracy.

Defendant provides multiple examples of the negative connotations associated with "reaper" and "the Grim Reaper," but fails to address the probative value of the evidence. While the word "reaper" may have prejudicial connotations, the Facebook post was not marginally probative. See *Kowalski*, 492 Mich at 137. Defendant's Facebook post and mention of his group, "the reapers," contained evidence establishing motive, premeditation, intent, and the relationship of defendant and codefendants. Moreover, defendant claimed it was a term of affection for his friend group. In fact, trial counsel stated during his opening, "And that friends' group had a playful or affectation [sic] name for each other, they called each other The Reapers and that might sound like a strange name but I just—I wanna get that out there, that this is the name that they went by." Defendant has not established that the danger of unfair prejudice of the use of the term "reapers" "substantially outweigh[ed] the probative value of the evidence." *Head*, 323 Mich App at 541.

The trial court did not err by denying defendant's motion in limine and allowing the term "reapers" to be used at trial.

## V. FEKO'S TESTIMONY

Defendant argues the trial court violated his rights under the Confrontation Clause of the Sixth Amendment by granting the prosecution's motion to exclude Feko's testimony regarding his history as an informant. We agree that the trial court erred, but its error was harmless.

Defendant argues Feko's status as an informant was relevant as impeachment evidence under MRE 611(c) because it would establish his bias for the prosecution. "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." MRE 611(c). "While the proper scope of cross-examination lies within the sound discretion of the trial court, the bias or interest of a witness is always a relevant subject of inquiry upon cross-examination." *People v Morton*, 213 Mich App 331, 334; 539 NW2d 771 (1995) (cleaned up).

The testimony defendant cites from the preliminary examination indicated Feko admitted he was an informant and received leniency under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.* for his cooperation in an unrelated case. Further, Feko was an informant for an unrelated drug case, which was handled by the MSP. With respect to Feko's HYTA conviction, the trial court stated: "[T]hat is not a conviction, he cannot be impeached by that, and that—the motion is granted was to the response to that." The trial court is correct HYTA is not a conviction and thus not admissible for impeachment purposed under MRE 609. Accordingly, the trial court did not err by excluding mention of Feko's HYTA status.

Defendant claims he wanted to use Feko's "history as an informant" for impeachment purposes on cross-examination. In both the unrelated case and this case, Feko received a favorable plea deal for his cooperation. Feko admitted that the plea deal he received in this case was for a lesser charge and was his motivation to testify. Feko testified that he did not initially go to the police because he wanted to help defendant evade the police. But Feko's willingness to testify against defendant in exchange for a plea deal calls into question his claim that he wanted to help defendant and codefendants. Given Feko's previous status as an informant and his change in position in this case, his time as an informant would be relevant to demonstrate his bias. Because there was evidence Feko cooperated with the same law enforcement agency and received favorable plea deals for both cases, the trial court erred by excluding Feko's testimony regarding his history as an informant. See *Morton*, 213 Mich App at 334.

Defendant contends the trial court's exclusion of Feko's testimony regarding his time as an informant violated his constitutional right to confrontation. The United States and Michigan Constitutions establish and protect a defendant's right to confront witnesses. US Const, Am VI; Const 1963, art. 1, § 20. "Cross-examination is a valuable right of the accused to expose falsehoods and bring out the truth." *People v Brown*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 359376); slip op at 3. "However, the right of cross-examination is not unfettered; it does not include a right to cross-examine witnesses about irrelevant issues and may bend to other legitimate interests of trial procedure or societal expectations." *Id.* at ___; slip op at 3. "A limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred

constitutes denial of the constitutional right of confrontation." *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998).

Feko's status as an informant could be used to establish his bias for law enforcement. Although defendant was not entitled to an unfettered cross-examination, he was entitled to address Feko's bias. "However, violations of the right to adequate cross-examination are subject to a harmless-error analysis." *Id*. "Whether such an error is harmless in a particular case depends on a host of factors, including the importance of the witness' [sic] testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Id*. at 644-645.

Although defendant was unable to cross-examine Feko about his status as an informant, defendant was able to elicit other testimony regarding Feko's biases and credibility. Defendant elicited testimony concerning Feko's plea deal and cooperation with the prosecution. Further, Feko admitted that the reduction in charge was his motivation for testifying. Defendant also addressed Feko's drug habit and inconsistencies in his testimony. Moreover, much of Feko's testimony was cumulative because other witnesses also testified about defendant acquiring the gun from Feko and defendant stating that he killed the victim.

While defendant claims the prosecution's case was "not trivial [but] not overwhelming," he ignores the evidence the prosecution presented establishing his role in the murder. Bemis and Narena testified that defendant orchestrated the plan to kill the victim. Bemis provided testimony demonstrating how defendant came to possess the gun. Although Bemis and Narena did not know who shot the victim, they placed defendant in the building with Smith and Ramsey when she was shot. Further, defendant stated in his Facebook post that the victim had to go and was worthless. There was also surveillance video showing the victim being picked up under the Rossler Street bridge, which Smith messaged defendant was a part of his plan to trap the victim. And multiple witnesses testified that defendant told them he killed the victim. Accordingly, we conclude that the trial court's error in denying defendant the opportunity to cross-examine Feko about his informant status was harmless.

Affirmed.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Sima G. Patel